**Pat S. HOLLOWAY, et al.,
Plaintiffs-Appellees,**

v.

**Judge Dee Brown WALKER, et al., Defendants,**

**Judge Dee Brown Walker,
Defendant-Appellant.**

No. 84–1772.

United States Court of Appeals,
Fifth Circuit.

July 18, 1985.

Rehearing and Rehearing En Banc
Denied Sept. 4, 1985.

Johnson, Circuit Judge, filed dissenting opinion.

Bruce W. Claycombe, Morgan A. Jones, Dallas, Tex., for defendant-appellant.

Joe H. Reynolds, Reynolds, Allen & Cook, Inc., Houston, Tex., for plaintiffs-appellees.

Before JOHNSON, JOLLY and HILL, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This interlocutory appeal presents questions relating to the asserted defense of judicial immunity. Texas Judge Dee Brown Walker and other defendants are alleged to have seized control of Humble Oil pursuant to a conspiracy to deprive the legitimate owners of Humble of their property without due process of law. The appellee Holloway and others brought suit for damages and equitable relief under 42 U.S.C. § 1983, charging that Walker abused his office by imposing a receivership on Humble, appointing an incompetent administrator, and largely wrecking the corporation in accordance with the aims of the conspiracy. Walker moved to dismiss all claims against him, arguing that the plaintiffs had failed to present allegations sufficient to warrant injunctive relief and, in addition, arguing that his judicial immunity bars this suit. The district court dismissed Walker's motion. Because we find the order denying immunity from damages is an appealable order, and that Walker is entitled to the protection of absolute judicial immunity from damages in this case, we reverse the district court, and order the dismissal of the damages action against him. Moreover, we dismiss all pendent state law claims on eleventh amendment grounds. We find no other appealable order in this case, and accordingly dismiss the remainder of the appeal.

## I

In reviewing this order denying dismissal, we do not go outside the pleadings. We accept all well pleaded facts as true and view them in the light most favorable to the plaintiff. *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.,* 690 F.2d 489, 500 (5th Cir.1982). We cannot order a dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80, 84 (1957); *Cook & Nichol, Inc. v. Plimsoll Club,* 451 F.2d 505, 506 (5th Cir.1971).

## II

The complicated history of this case begins on September 12, 1979 when the Brownings, defendants in the present case, filed suit against Humble, Holloway and others in the 193rd Judicial District Court of Dallas County, Texas, seeking, as the alleged equitable owners of substantially all of the assets of Humble and Holloway, the imposition of a constructive trust on Humble's and Holloway's assets, actual and exemplary damages, and the appointment of an interim receiver to manage the disputed assets. Sterling Pipeline Company was later added to the case. (The lawsuit is hereinafter referred to as the "1979 case.") On November 19, 1979, Humble and Holloway filed Chapter 11 voluntary bankruptcy petitions and removed the 1979

case to the United States Bankruptcy Court for the Northern District of Texas, pursuant to 28 U.S.C. § 1478(a).

The parties entered a "Stipulation and Agreement on Manner in Which Controversy Shall Be Heard, Determined and Liquidated," which was approved by the bankruptcy court and annexed to the court's January 18, 1980 "Order Remanding Causes of Action and Modifying Automatic Stay." The remand order remanded the 1979 case to the 193rd Judicial District Court pursuant to the terms of the stipulation and agreement, and modified the automatic stay to permit trial of the case upon remand, subject to the terms of the stipulation and agreement. The stipulation and agreement provided, among other things, that upon remand of the case the parties would request the presiding judge of the administrative judicial district to assign a visiting or retired state judge to hear the consolidated cases.

The case was remanded and the presiding judge assigned it to a retired state judge who ordered enforcement of a prior settlement agreement. In 1981, the Court of Appeals for the Fifth Supreme Judicial District of Texas (the "Texas court of appeals") reversed the order enforcing the settlement agreement and remanded the case for a jury trial. The Texas Supreme Court found no reversible error. Upon remand from the state appellate courts, the 1979 case was assigned to a different retired state judge who entered an order nullifying the prior settlement agreement.

On May 26, 1982, a group of investors sued Holloway and Humble in the 162nd Judicial District Court of Dallas County, Texas, Judge Dee Brown Walker presiding, claiming that Humble had wrongfully shut-in over 150 oil and gas wells jointly owned by the investors and Humble. This suit is alleged by Holloway to have been brought pursuant to the conspiracy, solely for the purpose of creating a case before Walker into which the 1979 action could be consolidated, in violation of the agreement that restricted the judge who could hear the 1979 action to one who had retired or was visiting the judicial district. The investors sought the appointment of a receiver over Humble's assets. (The case is hereinafter referred to as the "1982 case.") The Brownings were named as defendants in the 1982 case because of their claim to ownership of Humble's and Holloway's assets. The 1982 case was removed to the bankruptcy court and remanded to Judge Walker's court on the same day.

On May 28, 1982, Judge Walker appointed a receiver in the 1982 case over Humble's and Holloway's assets. Thereafter "ensued a somewhat dizzying sequence of state court orders," most of which were issued by Judge Walker, and recounted in *Browning v. Navarro,* 37 B.R. 201, 205–06 (D.C.N.D.Tex.1983), which resulted in the transfer and consolidation of the 1979 case into the 1982 case before Judge Walker in the 162nd Judicial District Court. On June 24, 1982, the May 28, 1982 receivership order having been vacated by the state court of appeals,[1] Judge Walker granted the Brownings' request for a separate and expedited trial of the 1979 case. On August 26, 1982, after a month-long trial, judgment was entered in the 1979 case for the Brownings, imposing a constructive trust on Humble's and Holloway's assets and awarding the Brownings actual damages of $72,000,000 and exemplary damages of $10,000,000.

On November 18, 1982, Holloway and Humble brought the action in which the present appeal is taken (the "civil rights case") against Judge Walker, the Brownings, legal counsel for the Brownings and many others, alleging that all the defendants had conspired to violate Holloway's and Humble's civil rights in the 1979 case. The complaint alleges that Walker and the other defendants conspired to seize control of Humble through the abuse of Walker's judicial office. Holloway contends that pursuant to the conspiracy Walker arranged to have the 1982 case brought be-

1. *Humble Exploration Co. v. Fairway Land Co.,* 641 S.W.2d 934 (Tex.App.—Dallas 1982 writ ref'd n.r.e.) *enforced,* 641 S.W.2d 941 (Tex.App.—Dallas 1982, no writ).

fore his court contrary to the usual procedure for assigning cases, that Walker thereafter arranged to have the 1979 and the 1982 cases consolidated in his court, that he imposed receiverships on Humble's and Holloway's assets, defied a mandamus order of the Texas Court of Appeals to refrain from interfering in Humble's business, appointed an incompetent receiver for Humble, dismissed many Humble personnel, posted guards at Humble's headquarters to seize the building, and, in a hotel near the courthouse, conducted meetings regarding Humble's business, all in furtherance of the conspiracy. Holloway contends extensive damage was done to him and Humble through Walker's pernicious actions. Holloway's complaint, broadly construed, may be interpreted to allege that Walker may have acted pursuant to a bribe, although the complaint does not use that word. Accordingly, we will treat the complaint as alleging both bribery and conspiracy.

Holloway's complaint requests damages as well as equitable and declaratory relief under section 1983. In addition, Holloway requests similar relief under Texas state law.

After Holloway and Humble filed the civil rights case they perfected an appeal from the judgment in the 1979 case to the Texas court of appeals. The Texas court of appeals was the appropriate Texas appellate court to hear the appeal of a case from Judge Walker's court. However, neither Humble nor Holloway posted a supersedeas bond to stay execution of the judgment in the 1979 case pending their appeal.

The Brownings then brought an action in the United States District Court (the "turnover action") to obtain possession of Holloway's and Humble's assets which, according to the judgment in the 1979 case, were being held for their benefit. Humble, Holloway and their trustee, Don Navarro, refused to turn the assets over to the Brownings. They argued that the proceedings before Judge Walker, an active judge, were void because the 1979 case was tried in contravention of the bankruptcy court's original remand order. The United States District Court granted a summary judgment in favor of Navarro and held that the trial of the 1979 case before Judge Walker was void. This court, however, reversed the district court's determinations and held that the trial before Judge Walker was not void because the remand order had been satisfied. *Browning v. Navarro,* 743 F.2d 1069 (5th Cir.1984).

The appeal of the 1979 case was pending in the Texas court of appeals while the turnover action was being litigated in the United States District Court. The Texas court of appeals, however, believed that the turnover action constituted a collateral attack on Judge Walker's judgment in the 1979 case. Therefore, the Texas court of appeals dismissed Humble's and Holloway's appeal[2] because it did not believe Humble and Holloway were entitled to two appeals from the judgment in the 1979 case. However, following this court's reversal of the district court's decision in the turnover action, the Texas court of appeals vacated its prior order dismissing the appeal of the 1979 case. From the appellate briefs before us, it appears the appeal of the 1979 action is now pending before the Texas courts, although the status of that appeal is not material to our decision in this case.

On December 8, 1982 Judge Walker filed a motion to dismiss the civil rights case based upon the doctrine of judicial immunity and the district court's lack of subject matter jurisdiction. On August 21, 1984 the district court entered its order denying Judge Walker's motion to dismiss. Thereafter, on October 16, 1984, the district court refused to amend its August 21 order to provide for an interlocutory appeal under 28 U.S.C. § 1292(b). Notwithstanding the district court's refusal to certify, Judge Walker now appeals the denial of immunity.

## III

A threshold issue we must first determine is whether this court has jurisdiction to hear this appeal. Orders denying absolute immunity are automatically appealable under *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *Williams v. Collins,* 728 F.2d 721 (5th Cir.1984). Accordingly, it appears certain that this court has jurisdiction to hear the appeal from the

2. *Humble Exploration Co. v. Browning,* 677 S.W.2d 111 (Tex.App.—Dallas, 1984, no writ).

district court's denial of judicial immunity from suit for damages. Holloway, however, denies the appealability of the present order, citing *Collins:*

> We caution that, despite the rule we announce today, many denials of claimed immunity in pretrial proceedings will not be in a posture for appellate review, in that entitlement to immunity *will turn on disputed questions of fact or will otherwise be inextricably bound up with the merits of the claims.*

*Collins* at 726 n. 7 (emphasis supplied). However, taking all well pleaded facts as true, we nevertheless find the complaint is insufficient to avoid Judge Walker's immunity. The caveat of footnote 7 therefore does not apply, and the order denying immunity is appealable.

## IV

### A

It is a well established rule that where a judge's absolute immunity would protect him from liability for the performance of particular acts, mere allegations that he performed those acts pursuant to a bribe or conspiracy will not be sufficient to avoid the immunity. *Sparks v. Duval Ranch Co.*, 604 F.2d 976 (5th Cir.1979) (en banc), *aff'd sub nom. Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). In *Sparks* we said:

> The material allegations in this case are ... that [the] state judge ... conspired with the four private defendants to deprive the plaintiffs of their oil production. This the judge did by entering an injunction, within his judicial powers to grant, prohibiting plaintiffs from producing certain oil. It is claimed that one of the defendants ... bribed him to do this, while the other two, in knowing furtherance of the conspiracy, acted as sureties for the injunction bond. [The state judge] was, of course, unqualifiedly immune from suit for the damages occasioned by his judicial act, and as to him the suit was correctly dismissed.

*Sparks* at 978.

The Supreme Court affirmed this court's holding: "As the case comes to us, the judge has been properly dismissed from the suit on immunity grounds." 101 S.Ct. at 186. Notwithstanding *Sparks*, Holloway strongly contends that the acts of conspiring and taking a bribe are not "judicial acts" even when directed at inducing a judge to take action for which he is entitled to absolute immunity. Holloway relies on *Rankin v. Howard*, 633 F.2d 844 (9th Cir. 1980), as support, noting that judicial immunity extends only to "judicial acts" performed without "a clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 1105–07, 55 L.Ed.2d 331 (1978). The *Rankin* court "conclud[ed] that a judge's private prior agreement to decide in favor of one party is not a judicial act," 633 F.2d at 847, and, accordingly, denied immunity for damages resulting from a decision predicated on such a prior agreement. This court does not follow *Rankin;* rather, we defer to the Supreme Court and our own en banc decision. Moreover, even if this were a case of first impression, we would decline to follow the Ninth Circuit's path simply because this aspect of *Rankin* is inconsistent with the fundamental policies underlying judicial immunity.

Among the first cases incorporating judicial immunity into federal jurisprudence was *Bradley v. Fisher*, 13 Wall. 335, 20 L.Ed. 646 (1872), which identified five reasons for immunity: first, and most important, a judge must be free to act upon his own convictions, without apprehension of personal consequences to himself; second, the controversiality and importance of the competing interests in contest before a court make it likely that the inevitable losing party may be overly willing to ascribe malevolent motives to the judge; third, judges faced with the prospect of damages actions would be driven to wasteful and distractive self-protection devices, such as excessive record-keeping; fourth, alternative remedies such as appeal and impeachment reduce the need for private rights of action against judges; and, fifth, the ease of alleging bad faith would make a qualified "good faith" immunity virtually worthless. *Bradley*, 13 Wall. at 347–54. These factors retain their vitality today. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 2912, 57 L.Ed.2d 895 (1978). To them one may add the need for finality of judgment.

There is little question that each of the *Bradley* factors applies as forcefully in cases, such as this one, involving allegations of conspiracy or bribery as to cases

involving allegations of judicial "bad faith." It requires little skill or imagination to convert many allegations that a judge has ruled in "bad faith" into allegations that he conspired to do so or was bribed; thus, the threat to disinterested decision-making is similar. An embittered, losing party is just as likely to allege bribery or conspiracy as any other malevolent motive of a judge. The possibility that judges will be driven to wasteful and distracting self-protective measures is just as great where liability could flow from conspiracy or bribery charges as from a charge of "bad faith." The same alternative remedies of appeal and impeachment (and in Texas, recourse to the voters) are available where the judge was bribed to commit an unsavory act or conspired to commit the act as where he simply commits acts in "bad faith." Finally, the threat to the finality of decision-making is the same where one alleges a judge conspired or was bribed to abuse his office as where one alleges he abused it in "bad faith." In summary, the need for a private right of action against a judge is no greater and the threat to the independence of judicial decision-making is no less where the allegations are of conspiracy or bribery than where the allegations are of bad faith, personal interest or outright malevolence. Thus, where the alleged harm, though resulting from a bribe or conspiracy, was inflicted by acts to which absolute immunity would apply, the complaint is insufficient to avoid judicial immunity. Accordingly, the complaint in the present case is sufficient to avoid Judge Walker's absolute immunity only if it alleges harm that did not result from the acts to which his immunity applies, and this it fails to do.

B

All of the harms Judge Walker is claimed to have caused are alleged to have been perpetrated by him through judicial acts not performed in the clear absence of all jurisdiction; accordingly Judge Walker's immunity bars a damages claim against him for these harms.

The complaint alleges that Judge Walker arranged to have cases brought in his court, placed the Humble Oil Company into receivership, discharged many of its key employees, posted in its corporate headquarters guards who intimidated and frightened its personnel, seized control of all of its stock, and appointed an incompetent receiver for the company. The complaints further allege that many of these acts were committed in open defiance of a proscriptive writ of the Texas Court of Appeals ordering him to desist from interference in the affairs of the Humble Corporation. Holloway urges that this proscriptive writ clearly deprived Walker of all jurisdiction and thus stripped him of judicial immunity from liability for these acts. We do not agree.

Judicial immunity does not extend to acts committed with a clear absence of all jurisdiction. However, the term "jurisdiction" is to be broadly construed to effectuate the policies of guaranteeing a disinterested and independent judicial decision-making process. *Stump v. Sparkman,* 98 S.Ct. at 1005. Where a judge does not clearly lack all subject-matter jurisdiction, he does not clearly lack *all* jurisdiction, and "the same principle of exemption from liability which obtains for errors committed in the ordinary prosecution of a suit where there is jurisdiction of both subject and person, applies in cases of this kind, and for the same reasons." *Bradley,* 13 Wall. at 352.[3] Judge Walker's was a court of general jurisdiction under Texas law; there is no question that he was generally empowered to conduct proceedings of the sort he conducted. "[I]n our view, it is ... significant that there was no ... statute and no case law ... prohibiting ... a court of general jurisdiction, from considering a petition of this kind." *Stump,* 98 S.Ct. at 1105.

Holloway argues that the Texas Court of Appeals clearly deprived Walker of all jurisdiction with its writ of prohibition, which ordered Walker to desist from interfering in the affairs of the Humble Corporation. In response, Walker argues that the prohibition order did not obviously apply to his orders promulgated in accordance with his court's control of the Humble stock owned by Holloway, but only to orders concerning Humble which were promulgated pursuant to the Humble corporate receivership. Whatever the merits of Walker's argument, it is indisputable that the prohibition

3. *Rankin* appears to misinterpret fundamentally this quoted language.

did not purport to determine that Walker's court was without general subject-matter jurisdiction. Indeed, the Texas Court of Appeals did *not* characterize its writ as a determination that Judge Walker was without all subject-matter jurisdiction; rather, the Texas Court of Appeals noted that Judge Walker's court did have subject-matter jurisdiction, but that he was acting in excess of that jurisdiction in continuing to conduct proceedings in the face of an effective order to desist: *"If our order became effective immediately, ... then* the trial court was without jurisdiction." *Humble Exploration Co. v. Walker,* 641 S.W.2d 941, 943 (Tex.App.—Dallas 1982, no writ). The prohibition order in this case did not even suggest, much less expressly determine, a clear absence of all subject-matter jurisdiction; accordingly, he had sufficient jurisdiction for section 1983 immunity purposes, even if he was without sufficient jurisdiction to conduct proceedings under Texas law.[4]

Nor is Walker alleged to have caused harm through acts other than the misuse of his court's power to issue injunctions and place the parties before him into receivership. But for those obviously "judicial acts," none of the harm Walker is alleged to have caused would have come about. As noted above, it is irrelevant that Walker is alleged to have performed those acts pursuant to a bribe or a conspiracy; they remain "judicial acts."

■ Holloway argues that many of Walker's acts were not "judicial" because they were performed outside the courtroom[5] and that Walker eventually came to act more like the chief executive officer of the Humble corporation than like a judge. Holloway cites the four factors set out in *McAlester v. Brown,* 469 F.2d 1280 (5th Cir.1972) as relevant to the determination

of whether an act is "judicial": (1) whether the precise act complained of was a normal judicial function; (2) whether the events involved occurred in the courtroom or adjunct spaces, such as the judge's chambers; (3) whether the controversy centered around a case then pending before the judge; and (4) whether the act arose directly and immediately out of a visit to the judge in his official capacity. *McAlester* at 1282. As with "jurisdiction," the term "judicial act" must be broadly construed to realize the policies behind immunity; while the four-part *McAlester* test will often suffice to determine that an act is "judicial," it is not the only test, and each of its factors are not to be given equal weight in all cases. For example, in exigent circumstances judges sometimes issue arrest or search warrants in police stations or in their own homes; in such cases, as here, the second *McAlester* factor will be lacking, but the act is obviously "judicial." The Supreme Court has forcefully indicated that the limits of judicial immunity are not to be set by subtle legalistic distinctions; rather, a broad functional approach is required: "Judges have absolute immunity not because of their particular location within the Government but because of the special nature of their responsibilities." *Butz,* 98 S.Ct. at 2913. Even administrative officials acting as judges, often without courtrooms or chambers, and without the technical jurisdictional confines of a state or federal court, nevertheless are protected by absolute judicial immunity. *Id.* The same is true of private arbitrators and other "quasi-judicial" figures. *Austin Municipal Securities, Inc. v. National Ass'n of Securities Dealers, Inc.,* 757 F.2d 676 (5th Cir.1985). To place too much emphasis on the second *McAlester* factor in this case would be inconsistent with the broad functional approach of *Butz* and its progeny.[6]

4. We do not, of course, intimate that a prohibition order from an intermediate court of appeals would have been alone sufficient to deprive Judge Walker of all jurisdiction for immunity purposes even if the order had clearly stated that his court was without subject matter jurisdiction. It is noteworthy that the Texas Supreme Court does not consider a judge to be exposed to suit under Texas law merely because he would be subject to a mandamus order. *Turner v. Pruitt,* 161 Tex. 532, 342 S.W.2d 422 (1961).

5. Specifically, Holloway draws attention to meetings among the defendants, held in a hotel near the courthouse and in courthouse hallways, at which Humble's affairs were considered.

6. In some cases, as where a judge cites a person for contempt of court, the second *McAlester* factor may almost dispositively indicate the act is "judicial."

The necessary functions of a judge often include administering remedies as much as determining the allocation of rights among the parties. On occasion a judge will find it necessary to administer a business, or a school district, or an entire prison system to effectively remedy a wrong. While the courts have traditionally drawn back from such detailed involvement in the affairs of the parties, that is no reason to deprive a judge of immunity. Texas law concededly allows for judicially imposed and monitored corporate receiverships; thus, Judge Walker's judicial acts might be alleged to be inappropriate, but cannot be described as nonjudicial. Issuing injunctions and imposing a receivership in a case before the court are acts obviously satisfying factors (1), (3) and (4) of the *McAlester* test. That some of these acts may have occurred outside the courtroom is not particularly important where it is at least arguable that the nature of the remedy—the receiverships—might naturally entail such informal proceedings. Accordingly, we hold that the complaint fails to allege that Judge Walker acted other than in his judicial capacity.

## V

Walker also appeals from the district court's denial of his motion to dismiss Holloway's claims for injunctive and declaratory relief. Holloway requests declaratory relief vacating various judgments entered by Walker and an injunction prohibiting Walker from unlawfully interfering with Humble's affairs in the future in either his official or private capacity.

### A

Because the denial of a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is not appealable, we must dismiss Walker's appeal from the district court's denial of his motion to dismiss the equitable and declaratory claims brought under section 1983. Judicial immunity does not extend to suits for equitable and declaratory relief under section 1983. *Pulliam v. Allen*, —— U.S. ——, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). Accordingly, cases involving claims for equitable and declaratory relief do not implicate the policies underlying *Collins;* that case was bottomed on the need to minimize the possibility that a judge would be needlessly put through a trial on a damages claim that was precluded by judicial immunity.

### B

Walker also moved in district court to dismiss the pendent state law claims against him; this motion was also denied. However, a state official is immune from suit in federal court for equitable relief based on state law because the eleventh amendment denies federal courts the jurisdiction to issue such injunctions against state officials. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Nor does this case fall under the "ultra vires" exception to eleventh amendment immunity. "[A] state officer may be said to act *ultra vires* only when he acts 'without any authority whatever' "; we have already seen that Walker's operative acts were judicial and not committed in the clear absence of all jurisdiction. *Pennhurst*, 104 S.Ct. at 908 n. 11. Thus, Walker is immune from suit for equitable relief based on state law.[7]

We therefore hold that Walker is immune from federal suit seeking equitable relief on state law grounds under *Pennhurst.* Accordingly, we reverse the district court and order all pendent state law claims, equitable and declaratory, as well as legal, dismissed.

## VI

In this case we have determined that Judge Walker is not alleged to have committed acts which were either not "judicial acts" or "in the clear absence of all jurisdiction," as those terms are used in immunity analyses. We have therefore held that

7. Because the issue of eleventh amendment immunity concerns a vital issue of jurisdiction as much as it concerns immunity, we must consider the question on our own motion. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974); *Save the Bay, Inc. v. United States Army,* 639 F.2d 1100, 1102 (5th Cir., 1981); Fed.R.Civ.P. 12(h)(3). "[Eleventh Amendment] limitation ... may be raised at any point in a proceeding." *Pennhurst,* 104 S.Ct. at 907, n. 8.

Holloway's claims for section 1983 damages and all of his pendent Texas state law claims must be dismissed on immunity grounds. Finally, we have held that this court is without jurisdiction to hear an interlocutory appeal from the district court's denial of Walker's Rule 12(b)(6) motion to dismiss the equitable and declaratory claims against him brought under section 1983. Accordingly, we reverse the district court on all claims properly before us and dismiss all damage claims and all state law claims against Walker for failure to state a claim upon which relief may be granted. The remainder of the appeal is dismissed.

REVERSED IN PART, DISMISSED IN PART.

JOHNSON, Circuit Judge, dissenting.

I respectfully dissent. Under the current procedural posture of the instant case, the plaintiffs have sufficiently alleged acts committed after the Texas Court of Appeals' mandamus order which were in the "clear absence of all jurisdiction." *See Stump v. Sparkman*, 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978). Accordingly, I would affirm the district court's interlocutory decision that plaintiffs' cause of action against Judge Walker should not be dismissed on immunity grounds.