# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 13, 2024

Lyle W. Cayce
Clerk

No. 24-50088

Enriqueta Diaz,

*Plaintiff—Appellee*,

*versus*

Ramsey English Cantu, *Maverick County Judge*; Roxanna Rios, *Commissioner Precinct 2*; Olga Ramos, *Commissioner Precinct 3*; Roberto Ruiz, *Commissioner Precinct 4*,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:23-CV-60

Before Dennis, Southwick, and Engelhardt, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

Enriqueta Diaz sought damages under Section 1983 for false imprisonment and bystander liability against Maverick County Judge English Cantu and three Maverick County commissioners in their official and individual capacities. The Defendants raised various defenses, but the district court held that each of them failed. The Defendants brought this interlocutory appeal. We disagree only with the district court's denial of a motion to dismiss the claims against the county commissioners for bystander liability. We

No. 24-50088

REVERSE the district court to that limited extent but otherwise AFFIRM. The case is REMANDED to the district court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

In 2023, the Maverick County[1] Commissioners Court — the body that manages that county's administrative affairs, TEX. CONST. art. V, § 18(b) — sought to issue certificates of obligation to finance water and sewer improvements. Enriqueta Diaz, a former county judge and a resident of Maverick County, opposed the plan and collected signatures on a petition to force an election on the issue.[2] The commissioners court met and decided to issue the certificates without holding an election, despite Diaz's petition. Maverick County Judge English Cantu presided over this meeting as prescribed by Texas law. TEX. CONST. art. V, § 18(b); TEX. LOC. GOV'T CODE § 81.001(b). Commissioners Rios, Ramos, and Ruiz were three of the four Maverick County commissioners who were present. Diaz watched from the gallery.

Once Diaz became convinced that her petition was not going to be honored, she began heckling. English Cantu threatened to hold her in contempt if she continued. The fourth commissioner (who is not a party to this suit) sought to prevent English Cantu from holding Diaz in contempt. English Cantu thought that Diaz continued to speak, so he held her in contempt and ordered her removed from the meeting. According to her complaint, Diaz was detained outside in the rain for three to four hours. While Diaz was

---

[1] The seat of Maverick County, Texas is Eagle Pass, located on the Rio Grande with an international bridge into Mexico.

[2] The facts are taken from the operative complaint. Because this is an interlocutory appeal from the denial of a motion to dismiss, "[w]e accept as true all well-pleaded facts and construe the complaint in the light most favorable to the plaintiff." *Norsworthy v. Houston Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023).

No. 24-50088

detained, English Cantu sought advice from the county attorney on whether he had the authority to hold Diaz in contempt. After that discussion, and still acting on his own, English Cantu signed a contempt order sentencing Diaz to 24 hours in a Maverick County jail. Diaz was booked and released without being confined in the jail.

Diaz, initially acting *pro se*, brought suit under 42 U.S.C. § 1983 in the United States District Court for the Western District of Texas. She sued County Judge English Cantu and Commissioners Rios, Ramos, and Ruiz for retaliating against her for exercising her First Amendment rights at the meeting. Diaz sought an injunction barring the issuance of the certificates and the use of contempt against her and others who signed the petition. On November 21, 2023, after thirteen hours of testimony over two days,[3] the district court, by agreement of the parties, entered a preliminary injunction prohibiting the Defendants from issuing the certificates of obligation until after a trial and ordered dismissal of the Defendants' related suit in state court for declaratory relief.[4] As part of the agreement, Diaz was ordered to amend her complaint "in accordance with the deadlines to be announced" in a scheduling order. Diaz replaced her previous claim seeking injunctive relief with Section 1983 claims seeking damages. This time, she brought a false imprisonment claim against County Judge English Cantu and bystander claims against Commissioners Rios, Ramos, and Ruiz in their official and individual capacities.

The Defendants moved to dismiss the complaint. Relevant here, they argued: (1) state sovereign immunity bars the official-capacity claim against County Judge English Cantu; (2) judicial immunity and qualified immunity

_____

[3] An attorney was appointed to represent Diaz after the first day of testimony.

[4] No issue about the injunction is raised here.

3

bar the individual-capacity claim against County Judge English Cantu; (3) qualified immunity bars the individual-capacity claims against the commissioners; and (4) the official-capacity claims are insufficiently pled under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). The district court rejected each argument and denied the motion. The Defendants timely brought this interlocutory appeal.

## DISCUSSION

### I.    *County Judge English Cantu*

County Judge English Cantu argues the claim against him in his official capacity is barred by state sovereign immunity. He argues the individual-capacity claim is barred by both judicial and qualified immunity.

We have jurisdiction to review the refusal to dismiss those claims under the collateral order doctrine. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993) (state sovereign immunity); *Holloway v. Walker*, 765 F.2d 517, 521–22 (5th Cir. 1985) (judicial immunity); *Mitchell v. Forsyth*, 472 U.S. 511, 528–30 (1985) (qualified immunity based on a lack of clearly established law); *Plumhoff v. Rickard*, 572 U.S. 765, 773 (2014) (lack of a constitutional violation in an individual-capacity suit); *Ashcroft v. Iqbal*, 556 U.S. 662, 672–75 (2009) (pleading sufficiency in an individual-capacity suit). We will separately consider each argument.

### a.    *Sovereign Immunity under the Eleventh Amendment*

First, English Cantu argues he is entitled to the immunity that would apply to a suit against a State, an immunity signified by the Eleventh Amendment, because Texas judges are arms of the state.

"Whether an entity is entitled to Eleventh Amendment sovereign immunity is a question of law reviewed *de novo*." *Bonin v. Sabine River Auth.*, 65 F.4th 249, 253 (5th Cir. 2023). "[A]n entity [or person] asserting

sovereign immunity bears the burden of demonstrating that it is an arm of the state." *Id.* (quotation marks omitted). Official-capacity suits are not "against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). For purposes of state sovereign immunity, the relevant question is whether "the state is the real, substantial party in interest." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (quoting *Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002)).

Diaz claims state sovereign immunity is inapplicable because of an *ultra vires* exception to that immunity. Under the doctrine established by *Ex parte Young*, 209 U.S. 123 (1908), the state is not treated as the real party in interest if an official acted wholly *ultra vires* or in violation of federal law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11, 104–06 (1984). That doctrine applies only when the plaintiff seeks prospective injunctive relief, not retrospective damages. *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 689 (1982) (plurality opinion); *Edelman*, 415 U.S. at 677.[5] Diaz seeks only retrospective damages, so *Ex parte Young* does not pierce any state sovereign immunity English Cantu may have in his official capacity.

When a plaintiff seeks retrospective damages, we consider six factors to determine if the official or entity is an arm of the state and therefore immune from a suit for damages:

---

[5] To the extent Diaz relies on Texas *ultra vires* cases, those do not govern federal claims in federal court. Even if they did, those cases make the same prospective–retrospective distinction as the federal cases. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373–77 (Tex. 2009).

No. 24-50088

1. Whether state statutes and case law view the agency as an arm of the state;

2. The source of the entity's funding;

3. The entity's degree of local autonomy;

4. Whether the entity is concerned primarily with local as opposed to statewide problems;

5. Whether the entity has the authority to sue and be sued in its own name; and

6. Whether the entity has the right to hold and use property.

*Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999). Of those factors, funding is the most important, and the final two are of minimal significance. *Id.* at 682.

This circuit has not determined whether a county judge whose office was created by the Texas Constitution serves as an arm of the state.[6] The precedents cited by English Cantu concern Texas district judges, not constitutional county judges.[7] Admittedly, there is language in some of our opinions similar to this: "Texas judges are entitled to Eleventh Amendment immunity." *Davis v. Tarrant County*, 565 F.3d 214, 228 (5th Cir. 2009). Context matters, and that opinion and the ones it cited all dealt with Texas district judges. *Id.* at 216; *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir.

---

[6] We refer to this office as that of a "constitutional county judge" to distinguish it from that of a county judge whose court and position were created by statute. The latter courts are usually called county courts at law.

[7] *Davis v. Tarrant County*, 565 F.3d 214, 216 (5th Cir. 2009); *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996); *De Los Santos v. Bosworth*, No. 21-10323, 2022 WL 738673, at *1 (5th Cir. Mar. 11, 2022); *Gutierrez v. Dallas County*, No. 3:23-CV-244, 2023 WL 8881483, at *1 (N.D. Tex. Nov. 28, 2023), *report and recommendation adopted*, No. 3:23-CV-244, 2023 WL 8881822 (N.D. Tex. Dec. 22, 2023).

1996); *Holloway v. Walker*, 765 F.2d 517, 520 (5th Cir. 1985). The question here concerns an official who, though having the title of "judge" and the authority to act in a judicial capacity, also has substantial other authority and duties. Thus, even if most or all other Texas judges are entitled to state sovereign immunity, we still must determine if this judge–administrator also enjoys that immunity. A fresh arm-of-the-state analysis is necessary.

We now consider the six factors for evaluating whether an entity or person is acting as an arm of the state. The first factor — how the office is treated by Texas law — weighs in favor of finding that constitutional county judges are not state officers. The Texas Constitution creates the position of a single county judge for each county. Tex. Const. art. V, § 15. Regardless of whether that single judge exercises state judicial power, the judge also presides over the commissioners court that handles "county business."[8] *Id.* art. V, §§ 1, 18(b). The commissioners court exercises significant control over constitutional county judges. *Id.* art. V, § 29 (setting terms); Tex. Gov't Code § 26.017 (filling vacancies); Tex. Loc. Gov't Code §§ 152.011, 152.013 (setting "the salary, expenses, and other allowances of elected county . . . officers"). Further, constitutional county judges are listed among "other county officers" removable by district judges. Tex. Const. art. V, § 24; Tex. Loc. Gov't Code § 87.012(3). We conclude that Texas law regards constitutional county judges as county officers.

The second factor is funding, which is the most important factor in this analysis. *Hudson*, 174 F.3d at 682. The commissioners court sets "the salary, expenses, and other allowances" of constitutional county judges, to

---

[8] *See* Tex. Const. art. V, § 18(b) ("The County Commissioners . . . , with the County Judge as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed.").

be paid from general county funds. TEX. LOC. GOV'T CODE §§ 152.001, 152.011, 152.013.[9] Certain constitutional county judges receive a salary supplement from the state, but the bulk of the funding appears to come from the county. *See* TEX. GOV'T CODE § 26.006.

The third and fourth factors, the degree of local autonomy and a focus on local and not statewide problems, favor treating constitutional county judges as local rather than state officers for many of the same reasons we just discussed. Because of the commissioners court's authority over the constitutional county judge, and due to the county judge's administrative role for the county, the position is primarily a local one. We do not know how often this county judge used judicial powers in court, but when presiding over the commissioners court, the "judge" is not a judicial officer but a county administrator handling "county business." TEX. CONST. art. V, §§ 1, 18(b). Indeed, "the county judge *principally* serves as the chief executive of a Texas county." *Cutrer v. Tarrant Cnty. Loc. Workforce Dev. Bd.*, 943 F.3d 265, 267 n.1 (5th Cir. 2019) (emphasis added). However often English Cantu presides as a judge, he does not argue that presiding over the county court is his principal function.

The fifth and sixth factors, capacity to sue and be sued and hold property, are inconclusive; the parties have not identified anything in Texas law to indicate whether constitutional county judges can sue and be sued or hold property in their capacity as constitutional county judges. These factors are the least important in the analysis, though, and the other factors strongly

---

[9] The statutes refer to elected county officers, but another provision makes clear that constitutional county judges receive salaries set by the commissioners court. *See* TEX. LOC. GOV'T CODE § 152.904 (regulating the salaries set by commissioners courts for certain constitutional county judges).

support a conclusion that constitutional county judges are local rather than state officers. *Hudson*, 174 F.3d at 682.

We conclude that Texas's constitutional county judges are not arms of the state and are therefore not entitled to state sovereign immunity. The district court correctly denied English Cantu state sovereign immunity on his official-capacity claim.

### b. *Judicial Immunity*

Next, English Cantu argues he is entitled to judicial immunity because (1) he is a judge, (2) the commissioners court is a court, and (3) holding some-one in contempt is an inherently judicial act. Of course, titles — like "judge" or "court" — do not control; function does. *Forrester v. White*, 484 U.S. 219, 227 (1988). In response to that reality, English Cantu argues that even if commissioners courts are more administrative than judicial, he was a judicial officer engaged in a judicial act when he held Diaz in contempt. No longer simply presiding over a county administrative meeting, he argues he was transformed into a judicial officer by virtue of holding an attendee of the meeting in contempt. We examine that contention, starting with our stand-ard of review.

"The district court's application of judicial immunity is a question of law, subject to *de novo* review." *Kemp ex rel. Kemp v. Perkins*, 324 F. App'x 409, 411 (5th Cir. 2009) (citing *Mays v. Sudderth*, 97 F.3d 107, 110 (5th Cir. 1996)). Judges do not receive judicial immunity for "actions not taken in the judge's judicial capacity" or "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). We consider four factors in this analysis:

> (1) whether the precise act complained of is a normal judicial function;

(2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers;

(3) whether the controversy centered around a case pending before the court; and

(4) whether the acts arose directly out of a visit to the judge in his official capacity.

*Davis*, 565 F.3d at 222.

The first factor favors judicial immunity because punishing for contempt is a normal judicial function. *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993). Although some legislative bodies and agencies in Texas are given the power to punish for contempt,[10] punishing for contempt is typically a judicial function. The remaining three factors depend on whether the commissioners court is a court of law. The events took place during a meeting of the commissioners and dealt with an issue the commissioners had authority to consider, namely, whether to order an election before creating substantial debts for the county. If the commissioners court is a court in the relevant sense, these factors favor judicial immunity; if the commissioners court is a court in name only, these factors weigh against such immunity.

We conclude that the commissioners court is an administrative body without substantial judicial functions. *See Daves v. Dallas County*, 22 F.4th 522, 537 (5th Cir. 2022) (*en banc*) (referring to the commissioners court as the "county's chief administrative body, [which] is not generally, if ever, exercising judicial power"). The commissioners court is tasked with managing "county business," setting budgets and the like. Tex. Const. art. V,

---

[10] Tex. Gov't Code § 665.005(3) (House); *Id.* § 665.027(3) (Senate); Tex. Nat. Res. Code §§ 81.053(5), 81.064(c) (Railroad Commission); Tex. Loc. Gov't Code § 143.120(g) (Fire Fighters' and Police Officers' Civil Service Commission).

§ 18(b). The agenda for the meeting contained no judicial items. Even though a constitutional county judge may also conduct judicial business in court, no such proceedings were occurring when English Cantu found Diaz in contempt.

The commissioners court, at least at this meeting, was a court in name only, and English Cantu was acting as an administrative official, not a judge, when presiding over it. Therefore, the final three *Davis* factors weigh against judicial immunity. The district court properly denied judicial immunity.

### c. *Qualified Immunity (Individual Capacity)*

Finally, English Cantu argues he is entitled to qualified immunity because, first, his lack of authority to hold Diaz in contempt was unclear, and second, there was probable cause to believe Diaz was in contempt of court.

"[R]eview of the denial of a motion to dismiss predicated on a defense of qualified immunity is *de novo*." *Lincoln v. Barnes*, 855 F.3d 297, 300–01 (5th Cir. 2017). "We must take the complaint's factual allegations as true and view them in the light most favorable to the plaintiff." *Id.* at 301 (quotation omitted). The plaintiff "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [s]he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* (quotation omitted). Qualified immunity bars individual-capacity liability for "government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a right to be clearly established, "a case directly on point" is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The "right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Reichle v.*

11

*Howards*, 566 U.S. 658, 664 (2012) (quoting *al-Kidd*, 563 U.S. at 741) (quotation marks omitted). Qualified immunity thus protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Subordinate but present in our just-stated array of legal principles is a threshold question of whether an official was acting within discretionary authority, which we will refer to as an issue of the scope of authority for the official. *Sweetin v. Texas City*, 48 F.4th 387, 392 (5th Cir. 2022). There is little precedent in this circuit that addresses the effect of a lack of clarity in the scope of authority. Whether the law is clear usually arises at a different point — the authority exists but was its use in clear violation of law?

The parties disagree about the existence of English Cantu's contempt authority under Texas law. English Cantu argues he has inherent contempt authority, apart from any statute. If so, a statute granting a county judge contempt authority when conducting judicial proceedings is superfluous. *See* Tex. Gov't Code § 21.002(a) (expressly granting Texas judges the power to punish contempt).

Contrasting the statutory right for a county judge to act alone in court, statutorily it is the commissioners court, as a body, that may punish someone for contempt. Tex. Loc. Gov't Code § 81.023. Here, punishment was imposed by the county judge alone, without any commissioners-court vote. The relevant statute states that "[t]he commissioners court shall punish a person held in contempt by a fine of not more than $25 or by confinement for not more than 24 hours." *Id.*[11] Elsewhere, the commissioners court is

---

[11] This authority — and the same penalties — date back at least to 1876, the same year the current Texas Constitution was adopted:

> The Commissioners' Court shall have like power to punish contempts as the District and County Courts have, or may have, by law; *provided*, that said

defined as comprising "the county judge and the county commissioners." *Id.* § 81.001. The only case law interpreting the statute that we discovered is the district court opinion in the case before us on appeal. The plain text of the statute seems clear — regardless of who has authority to *find* someone in contempt in a commissioners court meeting, it is the entire court, as a body, that is authorized to *impose punishment*. The injury claimed here is Diaz's being held for several hours, then being taken to the police station and booked. At some point, there was an arrest for contempt. We have been shown no basis to hold that when a statute is clear that a collective body makes a decision on the punishment for contempt, the presiding officer of that body also has the power to act alone.

Although English Cantu suggests that his county judge contempt powers allow him to punish Diaz for contempt apart from the commissioners court contempt statute, the wording of the general contempt statute notably focuses on the court, not the judge. Tex. Gov't Code § 21.002(a). We reject that a county judge's contempt powers are portable — English Cantu may use his county court contempt powers for contempt related to his county court, but not for contempt in the commissioners court. We conclude that English Cantu acted entirely without authority.

We now consider whether it matters that the lack of authority may not have been clear. The record supports that English Cantu sought additional legal advice on the scope of his authority from the county attorney before continuing with his course of action on the alleged contempt. A sister circuit

---------------

punishment shall be by fine or imprisonment, and in no case by fine exceeding twenty-five dollars, or by imprisonment beyond twenty-four hours . . . .

1876 Tex. Gen. Laws 53; *see also* 1879 Tex. Rev. Civ. Stat. art. 1514(11) (granting commissioners courts the power "[t]o punish contempts by fine not to exceed twenty-five dollars, or by imprisonment not to exceed twenty-four hours").

has held that lack of discretionary authority must be clearly established to strip an official of qualified immunity. *In re Allen*, 106 F.3d 582, 593–94 (4th Cir. 1997). We have neither explicitly accepted nor rejected that idea. Indeed, we have not been cited to any occasion in which this court considered the question.

On the other hand, our articulation of the standard for qualified immunity leaves little room for implying a "clearly-established" modifier: "The defendant official must first satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority." *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019). A later opinion was more explicit: "To even get into the qualified-immunity framework, the government official must 'satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority.'" *Sweetin*, 48 F.4th at 392 (quoting *Cherry Knoll*, 392 F.3d at 318).[12]

To the extent the issue is open because no precedential opinion of this court has explicitly made any holding on the need for clarity, we make a holding now. We have been provided little assistance in the briefing on the question of whether the official's scope of authority must be clear. We conclude that our court's articulation, at least our recent expressions in *Cherry Knoll*

---

[12] Different circuits have reached different conclusions about the need for clarity in the scope of authority. *See* Pat Fackrell, *A Call to Clarify the "Scope of Authority" Question of Qualified Immunity*, 68 Cleveland St. L. Rev. 1, 11–21 (2019). The article identifies the different approaches; we consider its brief description to be outdated that the Fifth Circuit has no requirement that an official have "acted within the scope of his authority under state law." *Id.* at 11 (citing *Gagne v. City of Galveston*, 805 F.2d 558, 560 (5th Cir. 1986)). The 2019 article may have been written before our 2019 opinion in *Cherry Knoll*. Another review of the circuit split on the issue is discussed in a petition for a writ of certiorari in a recent Eighth Circuit case. *See generally* Petition for Writ of Certiorari, *Central Specialties, Inc. v. Large*, 143 S. Ct. 369 (2022) (No. 21-1552), 2022 WL 2119484. The Supreme Court has not clarified the proper approach.

and *Sweetin*, have validly been explicit that the discretionary authority must be held to exist. Considering the broad reach of qualified immunity in protecting officials from claims even when they have violated rights, we see no justification for extending this immunity even further. Thus, it is immaterial whether it was clearly established that a county judge had no unilateral authority to punish someone for contempt at a meeting of the commissioners court. We hold that such authority does not exist, making qualified immunity inapplicable.

Because English Cantu acted without discretionary authority, he does not "even get into the qualified-immunity framework." *Sweetin*, 48 F.4th at 392. For that reason, we need not determine whether Diaz stated a valid constitutional claim against him — that is an issue *within* the qualified-immunity framework. *Id.* at 391–92. Our jurisdiction on interlocutory appeal is sharply limited; having determined that there is no qualified immunity, we go no further. We thus agree with another circuit's explanation of the same point. *See Estate of Cummings v. Davenport*, 906 F.3d 934, 943–44 (11th Cir. 2018). The district court properly denied English Cantu qualified immunity.

## II.    *The Commissioners*

The individual defendant commissioners argue that the individual-capacity claims brought against them are barred by qualified immunity because our bystander liability cases are restricted to the law-enforcement context. We have jurisdiction over this argument under the collateral order doctrine. *Mitchell*, 472 U.S. at 528–30 (qualified immunity based on a lack of clearly established law); *Plumhoff*, 572 U.S. at 773 (lack of a constitutional violation in an individual-capacity suit); *Iqbal*, 556 U.S. at 672–75 (pleading sufficiency in an individual-capacity suit).

Diaz argues (1) the right against false imprisonment is clearly established; (2) the contempt statute's plain text put the commissioners on notice

that English Cantu acted without authority; and (3) bystander liability extends to all government officials, not just law-enforcement officers. The law, however, is not clearly established on the third point. Although we have generally used the term "officer" and not "law-enforcement officer," past bystander liability cases have dealt exclusively with law-enforcement officers. *E.g.*, *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). True, we have stated that bystander liability may apply beyond "the context of excessive force claims," but we interpret that language to refer to the kind of constitutional violations that qualify, not the officials who have a duty to intervene. *Id.* at 646 n.11 (citing cases dealing with law-enforcement officers).

The parties have not identified any bystander liability cases dealing with officials other than law-enforcement officers. At oral argument, Diaz's counsel all but conceded that we would have to "extend" existing case law to reach the commissioners. Accordingly, these officials were not on notice that they had a duty to intervene even if they might have had clear notice (which we are not holding) that Diaz's rights were being violated. *Id.* at 647 n.13 (focusing on whether it was clearly established that the official needed to intervene).

The district court erred in denying qualified immunity based on a supposed duty to intervene.

## III.    Monell *Arguments*

The Defendants argue the official-capacity claims against them are insufficiently pled under *Monell*. We do not have appellate jurisdiction to review *Monell* arguments on interlocutory appeal. *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 43 (1995); *Trent v. Wade*, 776 F.3d 368, 388–89 (5th Cir. 2015). No party has argued that we should exercise pendent appellate jurisdiction to reach these issues, and our resolution of the other issues has not necessarily disposed of the official-capacity claims. Exercising pendent

No. 24-50088

appellate jurisdiction to reach the *Monell* arguments here would be inappropriate under our precedents. *See Escobar v. Montee*, 895 F.3d 387, 392–93 (5th Cir. 2018) (outlining situations justifying pendent appellate jurisdiction).

\*     \*     \*

We AFFIRM the district court's order with respect to its rulings on the various claims of immunity by English Cantu. We REVERSE and RENDER for the commissioners the portion of the district court's order that denied qualified immunity on bystander liability claims. We DISMISS the portion of the appeal that presented *Monell* arguments. We REMAND for further proceedings.