United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 13, 2007**

**Charles R. Fulbruge III**
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————

No. 06-10693

———————

DELORES A. ZARNOW

                    Plaintiff-Appellee,

              v.

CITY OF WICHITA FALLS, TEXAS;
CHIEF OF POLICE KEN COUGHLIN; SERGEANT ROGER KENDALL;
BOBBY DILBECK; DENNIS KEETHLER

                    Defendants-Appellants

———————————————————————————

Appeal from the United States District Court for the
        Northern District of Texas, Wichita Falls

———————————————————————————

Before SMITH, BENAVIDES, and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

    Some people enjoy collecting baseballs cards or rare coins.

Dr. Allen Zarnow enjoyed collecting weapons and explosives.  While

the unexpected workplace discovery of a collector's Mickey Mantle

rookie cards or buffalo nickels might be met with amusement by co-

workers, however, the discovery of guns and blasting caps provokes

a much stronger reaction, especially a workplace available to the

public.  This case arises out of the latter context, posing the

question of whether police officers are entitled to qualified

immunity when they reacted hastily to a perceived danger. We DISMISS in part and REVERSE in part.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A. The Initial Police Response

On July 13, 1999, officers from the Wichita Falls Police Department responded to a call at the Clinics of North Texas ("the Clinic"). Clinic employees had discovered a gun, magazine, box of shells, .50 caliber armor-piercing ammunition, blasting caps, fuse cord, and fuse-type materials — described by responding firefighters as "finger poppers" or "little booby-traps" — inside Zarnow's office desk. Zarnow, a Clinic doctor for fifteen years, was on vacation at the time.

The first police officer to arrive at the scene observed the items and, based on his previous military experience, opined that they were "dangerous." The Clinic staff told him that Zarnow was a "gun expert and salesman," had talked about purchasing a rocket launcher, and often launched rockets and blew up stumps on his land in Oklahoma. The officer briefed Police Sergeant Joe Snyder and contacted the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). Snyder telephoned Police Sergeant Roger Kendall, and informed him of the "bomb call" at the Clinic. Kendall arrived at the scene shortly after 5:00 p.m.

Kendall ordered Officer Dennis Keethler to conduct a videotaped interview of Nurse Kyle. The contents of this

interview, which officers relied upon in the decision to obtain search warrants, are hotly disputed. Most significantly, according to Keethler, Nurse Kyle reported Zarnow having said that "it would be easy to bomb the local facilities." Kyle now denies making any such statement, and the statement does not appear on the videotape of the interview. Kyle also reportedly told Keethler that Zarnow was opposed to the local mergers of medical facilities, including the Clinic, was moody and acted kind of manic depressive, and that she was scared because she did not want him to "come after" her.

After 7:00 p.m., a U.S. Army sergeant specializing in explosive ordinance disposal entered the office and discovered a riot bomb, smoke grenades, black powder, and 48 bottles of nitromethane liquid known as Kinepak, a binary explosive.

B. The Warrants

At 5:40 p.m., Kendall dispatched Detective Kyle Collier to prepare an affidavit and procure a search warrant for Zarnow's home in Wichita Falls. The warrant stated that the specific offense believe to be committed was "possession of illegal explosives and other explosive devices" in violation of Texas Penal Code sections 46.05 and 46.09. The warrant asserted that "explosives" and "explosive devices" were found inside Zarnow's office, that "this residence is supposed to be booby trapped according to an employee that works with Dr. Zarnow," that "Zarnow had told employees that he is in possession of a rocket launcher," and that the "dangerous explosives" at the office were identified by "an expert on bombs

3

and explosives" based on his "experience with the military."

The warrant's only suggestion that there would be illegal weapons at Zarnow's house was the claim that he "is also known to be in possession of various guns and ammunition at his residence and has his gun safe booby trapped with tear gas if someone attempts to enter." A magistrate approved a warrant to search for any explosive devices or prohibited weapons, along with any documents or notes corresponding to ownership of the weapons or the house.

At 5:55 p.m., Kendall sent Officer Bobby Dilbeck to obtain a search warrant for a locked file cabinet in Zarnow's office. The cabinet warrant was based on a belief that Zarnow was "unlawfully in possession of prohibited weapons, to wit, explosive devices." The warrant asserted that officers had found "numerous explosive devices inside the office," that bomb squad personnel had asserted that "the devices found were explosive," and that an employee had "stated that Zarnow has talked to having various types of other explosive devices in his possession." A magistrate approved this warrant as well.

C. The Search

Police tactical officers surrounded Zarnow's residence at approximately 6:30 p.m., began surveillance, and awaited further instructions. During the surveillance, officers learned that Zarnow had returned home from his family vacation. Detectives called him by phone and asked that he walk outside with his hands

4

above his head. Zarnow complied and officers frisked him for weapons. The officers briefly spoke to him at his home, at which time he stated that he had two loaded guns in the house and two locked gun safes. Officers escorted Zarnow to the police station where Officer Dilbeck and an ATF agent interrogated him. Zarnow assured them that he had all the necessary paperwork, including a firearm dealer's license, to possess and own all the weapons and other materials that the officers had found. Zarnow then accompanied the officers back to the home so that he could show them the paperwork.

Zarnow showed the paperwork to an ATF agent while Dilbeck and several other officers began a consensual search of the home. The officers found a box marked "explosives" in plain view, at which point Zarnow asked the officers to discontinue the search and leave his home. At that time, Dilbeck executed the house warrant and continued the search without Zarnow's permission.

The search concluded at midnight and officers took Zarnow back to the police station where they resumed questioning him. The next morning, Police Chief Ken Coughlin assembled all of the firearms and ammunition seized at Zarnow's home and laid them out before the television and print news media. Zarnow was jailed for possession of prohibited weapons and bond was set at $500,000. On July 16, police officers executed an additional search warrant at Zarnow's home and lake house and seized additional materials. As a result of the combined searches, the Wichita Falls police department

5

seized several thousand rounds of assorted ammunition and hundreds of weapons, including revolvers, a switchblade knife, shotguns, rifles, a flare launcher, an M-60 machine gun, a 0.9 mm Uzi, a spotter scope, four silencers, and a stun gun. Police also seized currency, bonds, and silver.

The Wichita County Grand Jury subsequently no-billed Zarnow, and the Montague County prosecutor declined to bring any charges against him with regard to the items seized from the lake house. Soon thereafter, Zarnow demanded return of the seized items, most of which were returned, but many of which were lost or unaccounted for.

Zarnow brought this case pursuant to 42 U.S.C. §§ 1983 and 1988 alleging that his constitutional rights were violated by the officers of the Wichita Falls Police Department, North Central Texas Drug Task Force, and by the City of Wichita Falls. He sought monetary compensation for the loss and destruction of the seized ammunition and unreturned items, and compensatory damages for health related damages and punitive damages. Each of the officers claimed qualified immunity and moved for dismissal on the pleadings and summary judgment. The district court dismissed all claims and parties except for Zarnow's Fourth Amendment allegations against the officers and claims related to the alleged unconstitutional seizure policies of the City. The City and officers appeal. During the pendency of this case, Zarnow passed away and is represented by his surviving wife.

II.  JURISDICTION

The City of Wichita Falls and Police Chief Coughlin appeal the district court's denial of summary judgment.  We lack jurisdiction over that appeal at this time.

Denial of summary judgment on qualified immunity grounds typically falls within the collateral order doctrine, an exception to the final judgment rule.  *See McKee v. City of Rockwall*, 877 F.2d 409, 412 (5th Cir. 1989) (stating that "interlocutory appeal is permissible only with respect to a decision which conclusively determines a disputed question, and which involves a claim of right separable from, and collateral to, rights asserted in the action") (citing *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985)).  Because qualified immunity is premised on an officer's "right to be free from suit,"  *McKee*, 877 F.2d at 413, the denial of qualified immunity, even early in litigation, conclusively disposes of the officer's right, a collateral issue.  *Id.*

Municipalities and officers in their official capacity, however, have no comparable right to be free from suit.  *Burge v. Parish of St. Tammany*, 187 F.3d 452, 476 (5th Cir. 1999).  The district court's denial of summary judgment for the City and Chief Coughlin does not dispose of any collateral issue; it marks only an initial judgment on the merits of Zarnow's case.  An erroneous ruling on liability "may be reviewed effectively on appeal from final judgment."  *Id.*

We have recognized pendent appellate jurisdiction over state law causes of action which were joined with a federal action subject to qualified immunity. *Gros v. City of Grand Prairie*, 209 F.3d 431, 436 (5th Cir. 2000) . "[P]endent interlocutory appellate jurisdiction over additional issues is looked on with disfavor," however, and we have refused to recognize "so strange an animal as pendent party interlocutory appellate jurisdiction." *McKee*, 877 F.2d at 413. While recognizing that some inefficient litigation may result from this rule, "we cannot expand our appellate jurisdiction without some signal from the Supreme Court that it is willing to relax the requirements of *Coopers* and *Cohen*." *Id.* The appeals of Police Chief Coughlin in his official capacity and the City of Wichita Falls must be dismissed for want of jurisdiction.

Contending that the City's appeal is frivolous, and that the City's initial brief "wholly ignores the law" as expressed in *McKee*, *id.*, Zarnow moves for sanctions, requesting damages, costs and attorney's fees. "An appeal is frivolous when it involves legal points that are not arguable on their merits." *Sturgeon v. Airborne Freight Corp.*, 778 F.2d 1154, 1161 (5th Cir. 1985). Although this jurisdictional question is not close and is foreclosed by *McKee*, in *Gros,* we recognized pendent interlocutory appellate jurisdiction in a qualified immunity case with a posture that was not wholly disparate from the posture at present. "We do not lightly impose sanctions for taking an appeal." *Sturgeon*, 778

8

F.2d at 1161.  The City's appeal may be meritless, but it is not so unjustified as to merit sanctions.

III. <u>DISCUSSION</u>

Having disposed of the City's and Chief Coughlin's claims for lack of jurisdiction, we turn to whether the district court erred in denying qualified immunity to Officers Kendall and Dilbeck for their role in securing the warrants to search Zarnow's house and locked office cabinet, and Officer Keethler for his role in interviewing Nurse Kyle.[1]

Once a public official raises the defense of qualified immunity, the burden rests on the plaintiff to rebut it.  *See Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) ("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.").  On a motion for summary judgment, a plaintiff must produce evidence showing two things:(1) that the defendants violated the plaintiff's constitutional rights and (2) that the violation was objectively unreasonable.  *See Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992).

---

[1]Appellants' complaint that the district court failed to consider and rule on Chief of Police Coughlin's qualified immunity defense is meritless.  Zarnow did not bring any claims against Chief of Police Coughlin in his individual capacity, and has not pointed to any facts which would support individual liability against Coughlin.  Officials have no qualified immunity when they are sued in their official capacity, so the district court did not err by failing to consider Coughlin's motion.

The inquiry into reasonableness asks "whether '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates the right.'" *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). If reasonable public officials could differ as to whether the defendants' actions were lawful, the defendants are entitled to immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990).

Zarnow charges that the officers violated his right to be free from unreasonable searches and seizures, as secured by the Fourth Amendment. To prevail, Zarnow must show that the search was unreasonable under clearly-established law at the time of the search. *See Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998). Courts "pay great deference to a magistrate's determination of probable cause," *Illinois v. Gates*, 462 U.S. 213, 236 (1983), but "courts will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 915 (1984) (citing *Gates*, 462 U.S. at 239). The Supreme Court laid out the relevant standard: "whether a reasonably well-trained officer in petitioner's position would have known that his

10

affidavit failed to establish probable cause and that he should not have applied for the warrant.  If such was the case, the officer's application for a warrant was not objectively reasonable[.]" *Malley*, 475 U.S. at 345.  "[W]e have consistently examined the actions of defendants individually in the qualified immunity context," and so we must consider the facts relating to Officers Kendall, Dilbeck, and Keethler separately.  *Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007).

A.   The district court erred in denying Officer Kendall's defense of qualified immunity as to the house search.

Kendall ordered another officer, Collier, who had not been otherwise involved in the investigation to obtain a search warrant for Zarnow's house based on the blasting caps and firearms found in the office and the "rumor and innuendo" circulating the building at the time.  In order to rebut Kendall's defense of qualified immunity, Zarnow must show that the obtainment and execution of the search warrant violated his Fourth Amendment rights, and that the violation was objectively unreasonable.

The warrant was issued to investigate violations of the Texas weapons statutes, §§ 46.05 and 46.09, pertaining to explosives.  To have probable cause for a search, officers would have to believe either that Zarnow was in possession of explosive weapons, or, alternatively, that he had the intent to combine explosive components for use in a criminal endeavor.  *See* Tex. Penal Code § 46.09 (specifying offense where "person knowingly possesses

11

components of an explosive weapon with the intent to combine the components into an explosive weapon for use in a criminal endeavor"). An "explosive weapon" is defined as "any explosive or incendiary bomb, grenade, rocket, or mine, that is designed, made or adapted for the purpose of inflicting serious bodily injury, death, or substantial property damage . . ." Tex. Penal Code § 46.01(2). The definition also "includes a device designed, made, or adapted for delivery or shooting an explosive weapon." *Id.* Blasting caps, under this definition, are not explosive weapons.[2] Therefore, given that the blasting caps were legal and the warrant was otherwise based on unsubstantiated statements, the district court found that there was no probable cause to support the warrant, and so any search of Zarnow's home pursuant to it constituted a violation of his Fourth Amendment rights. Agreeing with the district court that the warrant was invalid, and given

---

[2]We do not have jurisdiction to review a denial of qualified immunity where there is a genuine dispute over material facts. *Johnson v. Jones*, 515 U.S. 304, 313-18 (1995)(forbidding immediate appeal of district court's determination of which facts were genuinely disputed in its order denying summary judgment on qualified immunity). The riot bomb and smoke grenades that were allegedly discovered in the office later would likely qualify as explosive weapons or incendiary bombs. However, based upon the record it appears that these items were found after the search warrant was sought, were not mentioned in the warrant, and are disputed by Zarnow. Consequently, these are material disputed facts that we lack jurisdiction to review. In contrast, where the district court's denial of qualified immunity is based on an issue of law, as it otherwise is in this case, it is an appealable "final order" within the meaning of 28 U.S.C. § 1291. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

that the officers by all accounts *did* rely on the warrant in conducting the search after Zarnow withdrew consent, we conclude that his constitutional rights were violated by the execution of the warrant, and turn to whether Kendall's actions were objectively unreasonable.

The district court found that the Texas Penal Code clearly did not include blasting caps as prohibited explosive weapons. Moreover, the court reasoned that no reasonably trained officer in the exercise of reasonable professional judgment could conclude from the "rumors and innuendo" circulating at the Clinic that Zarnow possessed the blasting caps and fuse materials "with the intent to combine the components into an explosive weapon for use in a criminal endeavor." While we agree that the blasting caps did not qualify as an explosive weapon and that a reasonably trained officer would know that, we disagree with the district court as to whether an officer could reasonably believe that Zarnow possessed the items with intent to combine them into a weapon for use in a criminal endeavor.

First, while the statements made to the officers at the Clinic regarding Zarnow — allegedly including that he had noted the vulnerability of the Clinic to a bombing — may have been unsubstantiated, they were cause for alarm. The statements were also consistent with the discoveries inside the office. Further, even though blasting caps and other fuse materials may not alone qualify as explosive weapons within the meaning of the Texas Penal

13

Code, it is a reasonable assumption that someone in possession of such items intends to eventually use them for their purpose of detonating a larger, more powerful explosive. Zarnow was a medical doctor, not a commercial miner or demolition expert. As such, these items were disconcertingly out-of-place inside a health care facility. Considering these facts together, it was not unreasonable for an officer to believe that Zarnow possessed the blasting caps and fuse materials "with the intent to combine the components into an explosive weapon for use in a criminal endeavor."

Qualified immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 343. "That is the balance the courts have struck between compensating wronged individuals for deprivation of constitutional rights and frustrating officials in discharging their duties for fear of personal liability." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001). We are mindful that only four years beforehand, terrorists claimed the lives of 168 people in the bombing of the Alfred P. Murrah Federal Building in Oklahoma City, a short two-hour drive from Wichita Falls, Texas. Given the geographic and temporal proximity of that tragedy, a reasonable law enforcement officer would be acutely aware of the threat of similar occurrences. Officer Kendall was tasked with securing public safety and in doing so, responded to a potentially dangerous situation in a reasonable

14

way, making decisions as events unfolded and doing so within the boundaries of the law as he reasonably understood it. We find that Kendall's actions in ordering another officer to obtain a search warrant were not objectively unreasonable, and that the district court erred in denying him qualified immunity.

> B. The district court erred in denying Officer Kendall and Dilbeck's defense of qualified immunity as to the "locked cabinet" office search.

The affidavit Dilbeck provided to obtain the locked cabinet warrant was based on the same information, provided by Kendall, as the house warrant, but there are notable differences in the analysis. Police had recently found explosive materials, explosive components, and firearms in the immediate vicinity of the cabinet. The cabinet was located in a public place, the Clinic, and the contents of the cabinet may have posed an immediate danger to employees at the clinic. The Clinic officials had asked the fire department to remove any explosives from the Clinic. Under these facts, a reasonable officer could believe that it was necessary for public safety to search and secure the cabinet. *Cf. United States v. Goldstein*, 635 F.2d 356, 361 n.5 (5th Cir. 1981) ("[B]ecause of the great danger posed to the public safety by air piracy, searches conducted in the interest of airport safety are subject to a more relaxed test of reasonableness."); *United States v. Salava*, 978 F.2d 320, 324 (7th Cir. 1992) (recognizing an exception to the warrant requirement where "police have a reasonable suspicion that someone is injured or that the public safety is in jeopardy").

15

Dilbeck presented the information he had to a magistrate, and obtained a warrant.

Zarnow contends that the officers could have simply closed the office and waited for his return, citing statements by Fire Chief Lindsay in support of this plan. They were not obligated to do so, however. The Fourth Amendment prohibits only "unreasonable searches." The search of a locked office cabinet in a public office full of explosives is not an unreasonable search, as it is justified by concern for the public safety. Zarnow's constitutional rights were not violated by the locked cabinet search, so the court erred in denying Officers Kendall and Dilbeck qualified immunity.

C. The district court erred in denying Officer Keethler qualified immunity as to his interview of Nurse Kyle.

The district court denied qualified immunity for Officer Keethler because he was the source of "exaggerated information" relied on by other officers in securing warrants. Zarnow alleges that Keethler grossly misrepresented Nurse Kyle's testimony, and may have fabricated her memory of Zarnow stating that "it would be easy to bomb the local facilities." Misreporting of a witness' statement resembles negligence, which will not support the denial of qualified immunity. *See Daniels v. Williams*, 474 U.S. 326, 331-34 (1986). Thus, if Keethler was merely negligent in improperly reporting the contents of his interviews, he is entitled to qualified immunity. Zarnow shoulders the burden of demonstrating

16

otherwise. *See Pierce*, 117 F.3d at 871-72 (placing burden upon plaintiffs). Based upon the record before us, Zarnow has not successfully carried the burden of showing that Officer Keethler violated his constitutional rights by recklessly reporting information that led to an improper warrant.

First, it is not evident that the interview was even relied upon in obtaining the warrant. The warrant reports three statements from Clinic employees — that Zarnow possessed a rocket launcher, that his home might be booby-trapped, and that his gun safe was booby-trapped. None of these statements were attributed to the interview. Therefore, we cannot conclude that Keethler's reporting of the interview resulted in a violation of Zarnow's rights. *See Fraire*, 957 F.2d at 1273 (requiring a violation of Plaintiff's constitutional rights to deny qualified immunity). Second, even if the officers *did* rely upon the interview in seeking the warrant, Zarnow has failed to produce any evidence showing that Keethler's alleged mis-reporting constituted more than negligence, for which he is entitled to qualified immunity. *See Daniels*, 474 U.S. at 331-34.

IV. CONCLUSION

We lack jurisdiction to consider the appeals of the City and Chief Coughlin. The district court erred in denying qualified immunity to Officers Kendall, Dilbeck, and Keethler. For the foregoing reasons, we DISMISS the appeals of the City and Chief

17

Coughlin, and REVERSE the district court's denial of qualified immunity as to Officers Kendall, Dilbeck, and Keethler.