# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 2, 2025

Lyle W. Cayce
Clerk

————————

No. 24-40436

————————

Jeri Pearson; Elizabeth Klem; Ben Homan; Rob Fowler,

*Plaintiffs—Appellants*,

*versus*

Shriners Hospitals for Children, Incorporated;
Shriners Hospitals for Children, Texas; Beverly
Bokovitz; Frances Farley; Jerry Gantt; John McCabe;
Phillip Grady; Cecile Erwin Young,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:23-CV-387

———————————————————————

Before Wiener, Stewart, and Southwick, *Circuit Judges*.

Carl E. Stewart, *Circuit Judge*:

Plaintiffs-Appellants (the "Former Employees") were terminated from Shriners Hospitals for Children for refusing to get a COVID-19 vaccination. They then sued their private employer, its agents, and the Executive Commissioner of Texas Health and Human Services, for violating

No. 24-40436

their alleged right to refuse the vaccine.[1] The Former Employees asserted various 42 U.S.C. § 1983 claims, a claim directly under the statute permitting the vaccine's Emergency Use Authorization (the "EUA Statute"), and various Texas state-law claims. We AFFIRM the district court's judgment dismissing with prejudice the Former Employees' federal-law claims. We also AFFIRM the district court's judgment dismissing the Former Employees' state-law claims with prejudice for lack of supplemental jurisdiction, however, we MODIFY the judgment to reflect that it is without prejudice and AFFIRM as MODIFIED.

## I.

Nearly a year after COVID-19 first reached the United States, the Secretary of Health and Human Services ("HHS") issued EUAs for vaccines developed by Pfizer, Moderna, and Johnson & Johnson.[2] Because of the short timeline, the Food and Drug Administration (the "FDA") had not yet fully approved the vaccines. To streamline and organize the national vaccination effort, the federal government purchased all the available COVID-19 vaccines in the United States. Those vaccines were available exclusively through the federal COVID-19 vaccination program, in coordination with state and local governments.

Under this arrangement, states were responsible for "ensur[ing] the COVID-19 Vaccination Program [was] implemented throughout the

---

[1] Throughout this opinion we refer to the Defendants–Appellants in three groups: (1) Shriners Hospitals for Children and its wholly owned subsidiary Shriners Hospitals for Children, Texas, as "Shriners"; (2) Beverly Bokovitz, Frances Farley, Jerry Gantt, John McCabe, and Phillip Grady as the "Agents"; and (3) the Executive Commissioner of Texas Health and Human Services as the "Commissioner."

[2] Because this case was dismissed on a motion to dismiss, we draw all facts from the Former Employees' amended complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

jurisdiction in adherence with federal guidance and requirements." The organizations that administered vaccines to patients had similar obligations to "comply with all applicable requirements as set forth by the [FDA], including but not limited to requirements in any EUA that covers COVID-19 Vaccine[s]." For example, before administering the vaccine, providers had to "provide an approved [EUA] fact sheet or vaccine information statement (VIS) . . . to each vaccine recipient." As required under the EUA Statute, those fact sheets contained information that "informed" patients "of the option to accept or refuse administration of the product, [and] of the consequences, if any, of refusing administration of the product." *See* 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III).

Shriners was one vaccine provider. As a private nonprofit corporation, it operates an international network of children's hospitals. The Former Employees worked at one of those hospitals in Galveston, Texas. Shriners is incorporated in Colorado and headquartered in Florida. The two Agents who signed the vaccine provider agreement—Beverly Bokovitz and Frances Farley—were based outside of Texas.

In November 2021, Shriners adopted a companywide policy that required its employees to be vaccinated against COVID-19. The policy permitted employees to get vaccinated through Shriners or independent entities. The three Agents who signed the policy—Jerry Gantt, John McCabe, and Phillip Grady—were also based outside of Texas. The Former Employees refused to get vaccinated, so Shriners terminated their employment.

In December 2023, nearly two years after the Former Employees were terminated, they sued Shriners, its Agents, and the Commissioner. They

No. 24-40436

raised six § 1983 claims,[3] a standalone claim under the EUA Statute, and three Texas state-law claims.[4] The Former Employees argued that, Shriners—allegedly a state actor by virtue of the vaccine provider agreement—and its Agents violated their right to refuse the vaccine without consequences through the mandatory vaccination policy. They also argued that the Commissioner, for her part, allegedly violated the same right by failing to stop Shriners. They posited that she breached her duty to ensure that vaccine providers within Texas did not impose a burden on their choice to refuse the vaccine.

Shriners, its Agents, and the Commissioner moved to dismiss the Former Employees' claims. Shriners and its Agents argued that (1) there was no personal jurisdiction over the Agents, (2) the § 1983 claims were time barred, (3) there was no state action as required under § 1983, (4) none of the nonconstitutional provisions confer private rights of action under § 1983 or under the provisions themselves, (5) each claim failed on its merits, (6) Shriners and its Agents are entitled to qualified immunity, and (7) the district court should decline to exercise supplemental jurisdiction over the state-law claims.[5]

––––––––––––––––––––––––––––

[3] Under § 1983, the Former Employees alleged violations of their (1) substantive due process right to refuse a vaccine; (2) "privacy rights" under the Fourteenth Amendment; (3) equal protection right not to be classified on the basis of vaccination status; (4) procedural due process right to a hearing prior to depriving them of their right to refuse a vaccine without penalty; (5) right to be free from unconstitutional conditions; (6) right to refuse a vaccine under various statutes, treaties, and administrative actions.

[4] Under Texas state law, the Former Employees alleged (1) breach of contract as a third-party beneficiary to the vaccine provider agreement between Shriners and the federal government; (2) wrongful termination, and (3) intentional infliction of emotional distress.

[5] Shriners and its Agents do not renew on appeal their arguments that the Former Employees' § 1983 claims are time barred or that they are entitled to qualified immunity. Thus, we address them no further.

No. 24-40436

The Commissioner, for her part, argued that (1) the Former Employees lacked standing to sue her on traceability grounds,[6] (2) she was not personally involved in creating the policy or terminating the Former Employees, as required under § 1983, (3) none of the nonconstitutional provisions under which the Former Employees brought claims conferred private rights of action, (4) each claim failed on its merits, and (5) she is entitled to qualified immunity because the Former Employees have failed to cite a clearly established right.

The district court agreed with the defendants and dismissed all the Former Employees' claims. First, it determined that there was no personal jurisdiction over the Agents because they were protected by the fiduciary shield doctrine. Second, it found no state action to support the § 1983 claims. It noted that even assuming that Shriners was a state actor in its capacity as vaccine provider, it issued the mandatory vaccination policy in its capacity as a private employer. Third, the court dismissed the Former Employees' standalone claim under the EUA Statute because Shriners had no obligation as an employer, as opposed to as a vaccine provider, to give them the option to refuse the vaccine. Fourth, the court dismissed the Former Employees' claims against the Commissioner because she could not be liable for failing to correct Shriners's alleged misconduct when it was not unlawful. Finally, the court dismissed the remaining state-law claims as a matter of discretion under

---

[6] The Commissioner does not renew this argument on appeal. We nonetheless address it due to our independent obligation to evaluate Article III standing. *See Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 331–32 (5th Cir. 2002).

No. 24-40436

the supplemental jurisdiction statute. *See* 28 U.S.C. § 1367(c)(3).[7] The Former Employees timely appealed.

## II.

"Personal jurisdiction is a question of law reviewed *de novo*." *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021) (emphasis added). Similarly, "[q]uestions of law relating to constitutional standing are reviewed *de novo*." *In re Deepwater Horizon*, 739 F.3d 790, 798 (5th Cir. 2014). We also "review *de novo* a dismissal under rule 12(b)(6), applying the same standards as did the district court." *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).

"We review a district court's denial of leave to amend under Rule 15(a) for an abuse of discretion." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000).

## III.

For reasons that we now discuss, the district court did not err in dismissing the Former Employees' claims against the Agents, Shriners, or the Commissioner. Respectively, it did not have personal jurisdiction over

---

[7] The Former Employees have not appealed the district court's decision declining to exercise supplemental jurisdiction over their state-law claims. We still note that "[a] district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction." *McCreary v. Richardson*, 738 F.3d 651, 660-61 (5th Cir. 2013) (citing 28 U.S.C. § 1367(c)(3)). "When [it] exercises its discretion to dismiss state law claims," however, "it must do so without prejudice so that the plaintiff may refile in the appropriate state court." *Id.* (citing *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999)). Here, the district court dismissed the Former Employees' state-law claims with prejudice but should have done so without prejudice. *See id.* For that reason, we modify its judgment of dismissal as to those claims to be without prejudice and affirm as modified.

the Agents, Shriners was not a state actor when it implemented its mandatory vaccination policy, and the Commissioner was entitled to qualified immunity.

## A.

We start with the claims against the Agents. Because the Former Employees have failed to establish personal jurisdiction for these claims, they necessarily fail. *Sangha v. Navig8 ShipManagement Pvt. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

"When personal jurisdiction is challenged, the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'" *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999)). A district court may rule on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, but if so, the plaintiff must establish "a *prima facie* case of personal jurisdiction." *Sangha*, 882 F.3d at 101 (citing *Quick Techs*, 313 F.3d at 343). "[U]ncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985).

A plaintiff establishes the requisite a *prima facie* case by showing that "the [forum] state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process." *Sangha*, 882 F.3d at 101 (citation omitted). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.* (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). "Due process requires that the defendant have 'minimum contacts' with the forum state . . . and that exercising jurisdiction is consistent with 'traditional notions of fair play and substantial

No. 24-40436

justice.'" *Id.* (quoting *Johnston*, 523 F.3d at 609); *see Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (stating the same).

"Minimum contacts" can give rise to specific jurisdiction. *Sangha*, 882 F.3d at 101 (citing *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)).[8] For out-of-state defendants, courts have specific jurisdiction "only if the cause of action asserted arises out of or is related to those contacts." *Id.* (emphasis omitted) (quoting *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016)). If the relevant claims are based on "intentional, and allegedly tortious[] actions," the defendant's out-of-state actions must have been "expressly aimed at" the forum state. *Calder v. Jones*, 465 U.S. 783, 789 (1984); *see Walden v. Fiore*, 571 U.S. 277, 288 n.7 (2014) (quoting the same).

"Each defendant's contacts with the forum [s]tate must be assessed individually." *Calder*, 465 U.S. at 790. Thus, plaintiffs may not aggregate defendants' forum contacts and may not establish personal jurisdiction without specifying who did what. *Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980); *see Head v. Las Vegas Sands, Ltd. Liab. Corp.*, 760 F. App'x 281, 284 (5th Cir. 2019) (unpublished) (requiring "plaintiffs to submit evidence supporting personal jurisdiction over each defendant without grouping them together").

The Former Employees failed to satisfy this standard for jurisdiction over the Agents. They allege that Shriners took several actions, but they only ascribed one to each Agent: Bokovitz and Farley signed the vaccination provider agreement, and Gantt, McCabe, and Grady signed the mandatory

---

[8] Because the Former Employees do not allege general jurisdiction over the Agents, we discuss it no further. *See Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 & n.4 (5th Cir. 2019) ("Arguments . . . *in favor* of jurisdiction . . . can be forfeited." (emphasis added)).

vaccination policy. The Agents' names appear nowhere else in the amended complaint.

Bokovitz's and Farley's acts—signing the vaccination provider agreement—are insufficient to support specific jurisdiction. Although these actions are relevant to the Former Employees' theory on why Shriners is a state actor, they have nothing to do with depriving the Former Employees of their alleged right to refuse vaccinations without consequences. They relate to Shriners's vaccine administration across the United States, not targeted toward Texas. Thus, their claims against Bokovitz and Farley based on that right do not "arise out of or relate to" the pair's "contacts" with Texas. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Bristol Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017)).

Likewise, Gantt's, McCabe's, and Grady's acts—signing Shriners's mandatory vaccination policy—are not sufficiently connected to Texas to support specific jurisdiction. These actions relate to the Former Employees' claims, but there is no indication that the mandatory vaccination policy was signed in Texas or otherwise focused on Texas. To the contrary, Shriners is an international entity with locations across the United States and Canada. And the policy appears to apply to all Shriners locations. Thus, it was not "expressly aimed at" Texas. *See Calder*, 465 U.S. at 790; *see also Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002) (holding that a defamatory online article "presumably directed at the entire world, or perhaps just concerned U.S. citizens," was "not directed specifically at Texas" for personal jurisdiction purposes).

Because the Former Employees do not allege acts by any of the Agents to establish a *prima facie* case for personal jurisdiction, the district court properly dismissed the claims against them. *See Sangha*, 882 F.3d at 101.[9]

**B.**

As stated, the Former Employees bring claims against Shriners under § 1983 and the EUA Statute. Both sets of claims fail.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "a court must accept as true all of the [factual] allegations contained in a complaint," the same is not true of "legal conclusions." *Id.*

**1.**

To bring a claim under § 1983, a plaintiff must first show state action. *Priester v. Lowndes Cnty.*, 354 F.3d 414, 421 (5th Cir. 2004); *see Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 n.2 (2001) ("If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes action 'under color of state law' for § 1983 purposes." (citation omitted)). "A private entity can qualify as a state actor in a few limited circumstances." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019). Those "includ[e], for example (i) when the private entity performs a traditional, exclusive public

---

[9] The parties also disagree as to whether the district court erred by concluding that the fiduciary shield doctrine bars personal jurisdiction over the Agents. That doctrine, "if applicable, prevents the exercise of personal jurisdiction based solely on acts undertaken in a defendant's corporate capacity." *Savoie v. Pritchard*, 122 F.4th 185, 191 (5th Cir. 2024). Because we conclude that we lack personal jurisdiction over the Agents regardless of whether the doctrine applies, we do not analyze it any further.

No. 24-40436

function; (ii) when the government compels the private entity to take a particular action, or (iii) when the government acts jointly with the private entity." *Id.* (citations omitted). They also include (iv) "when the private entity is entwined with governmental policies, or when government is entwined in its management or control." *Brentwood Acad.*, 531 U.S. at 295 (cleaned up). "Deciding whether a deprivation of a protected right" falls within one of these categories "begins by identifying the specific conduct of which the plaintiff complains." *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999)). That is because a defendant "may be a state actor for some purposes but not for others." *Id.* (quoting *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir. 1996)).

For the Former Employees' claims, the relevant conduct is Shriners adopting and enforcing its mandatory vaccination policy. Under that policy, it terminated the Former Employees for refusing to get vaccinated. It expressly permitted employees to get vaccinated through Shriners or other entities. Thus, Shriners did not implicate its role administering COVID-19 vaccinations by requiring its employees to receive one. *See Cornish*, 402 F.3d at 550.[10]

A private organization requiring its employees to receive a vaccination is not state action. *See Halleck*, 587 U.S. at 809. First, imposing such a requirement is not a "power[] traditionally exclusively reserved to the State." *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). It is commonplace for companies—particularly hospitals—to place such mandates on their employees. *See Julapalli v. Boom*, No. 24-20276, 2025 WL

---

[10] We express no opinion regarding whether Shriners was a state actor in its role administering vaccines to its patients.

314123, at \*3 (5th Cir. Jan. 28, 2025) (unpublished) (holding that a private hospital's mandatory vaccination policy was not a public function). Second, the Former Employees have not alleged evidence showing that Texas compelled Shriners to adopt the policy. *See Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982). Third, they have not alleged evidence showing that the policy constitutes joint action between Shriners and Texas. Joint action requires "an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right, and that the private actor was a willing participant in joint activity with the state or its agents." *Hernandez v. Causey*, 124 F.4th 325, 337 (5th Cir. 2024) (citation omitted). The Former Employees have alleged no such "conspiracy" to adopt the mandatory vaccination policy. *See id.* And fourth, they did not allege that Texas was "entwined" with Shriners's decision to adopt the policy. *See Brentwood Acad.*, 531 U.S. at 295. The Former Employees have not alleged that Texas had any "say" in the hospital's "internal decision making" or that it had a "role in enacting or enforcing" the policy. *See Rundus v. City of Dallas*, 634 F.3d 309, 314–15 (5th Cir. 2011).

Because the Former Employees have failed to allege that "the specific conduct of which [they] complain[]" is state action, their § 1983 claims fail. *See Cornish*, 402 F.3d at 550.

**2.**

The EUA Statute permits the HHS Secretary to authorize use of a "drug, device, or biological product intended for [such] use in an actual or potential emergency." 21 U.S.C. § 360bbb-3(a)(1). It also requires the Secretary to establish "[a]ppropriate conditions designed to ensure that individuals to whom the product is administered are informed . . . of the option to accept or refuse administration of the product." 21 U.S.C.

§ 360bbb-3(e)(1)(A)(ii)(III). The Former Employees read this language to expressly provide them with "the option to accept or refuse" the COVID-19 vaccine without penalty. *Id.* They argue that Shriners deprived them of this purported right when it terminated them.

It did not. The EUA Statute's "option . . . to refuse" is far narrower than the Former Employees suggest. *See id.* To start, they again conflate Shriners's role as a private employer with its role as a vaccine provider. The EUA Statute only concerns the latter. Even assuming it places duties on anyone other than the HHS Secretary, the provision at issue focuses on vaccine providers. *See id.* It expressly limits its scope to the "person who carries out" the "activity" of administering COVID-19 vaccines. *Id.* The Former Employees, by eliding this distinction, violate "a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *See West Virginia v. EPA*, 597 U.S. 697, 721 (2022) (quotation omitted). Because the EUA Statute "does not apply at all" to those acting in their role as "private employers like the hospital in this case," Shriners did not violate it by terminating the Former Employees. *Bridges v. Houston Methodist Hosp.*, 543 F. Supp. 3d 525, 527 (S.D. Tex. 2021) (holding that a hospital did not violate the EUA Statute by adopting a mandatory COVID-19 vaccination policy on its employees because the statute "neither expands nor restricts the responsibilities of private employers"); *see Conner v. Kelly*, No. 23-11225, 2024 WL 3177782, at *3 (5th Cir. June 26, 2024) (unpublished) (holding the same when an airline adopted the same policy).

The EUA Statute's explicit focus on providing information to patients confirms this result. The provision at issue only requires vaccine providers to ensure that their patients are "informed" of their "option to

accept or refuse." 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III).[11] It mentions no restriction on whether those providers can require that their own workforce be vaccinated. *See id.* Indeed, it expressly contemplates that individuals may face "consequences" for "refusing" the vaccine. *Id.* Thus, the "informational obligation" in the EUA Statute "falls short of expressing a clear congressional intent to supersede state regulation of private employment." *See Hughes v. Terminix Pest Control, Inc.*, No. 23-30617, 2024 WL 3440465, at *1 (5th Cir. July 17, 2024) (unpublished).

In sum, the Former Employees' reliance on the EUA Statute is misplaced. *See Bridges*, 543 F. Supp. 3d at 527; *Hughes*, 2024 WL 3440465, at *1. Thus, the district court did not err in dismissing their claim under that statute.[12]

## C.

The Former Employees raise the same set of claims against the Commissioner as against Shriners and its Agents. For the Commissioner, however, they allege a failure to intervene. Specifically, they allege that she failed to prevent Shriners from terminating their employment. Although the Former Employees had Article III standing to bring these claims, they nonetheless fail because the Commissioner is entitled to qualified immunity.

### 1.

To satisfy Article III standing, a plaintiff must show that (1) she has suffered an "injury in fact," (2) the injury "likely was caused or likely will be

---

[11] Shriners provided those to whom it administered COVID-19 vaccinations with a fact sheet detailing their "option . . . to refuse." *See* 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III).

[12] Given that Shriners did not violate the Former Employees' rights under the EUA Statute, we need not address whether that statute creates an implied private right of action.

caused" by the defendant, and (3) the injury is likely to be "redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up).

Only the causation element is in question for the claims against the Commissioner.[13] To satisfy that element, "the links in the chain of causation, must not be too speculative or too attenuated." *Hippocratic Med.*, 602 U.S. at 383 (cleaned up); *see Allen v. Wright*, 468 U.S. 737, 751 (1984) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct."). The chain is impermissibly speculative or attenuated when "it is not sufficiently predictable how third parties would react to government action or cause downstream injury to plaintiffs." *Hippocratic Med.*, 602 U.S. at 383.

For the Commissioner, it is "sufficiently predictable" what would have occurred if she acted as the Former Employees wanted. *See id.* If she had stopped Shriners from enforcing its mandatory vaccination policy, the Former Employees would not have been terminated. Thus, her inaction is not "too speculative or too attenuated" to be fairly traceable to their injury. *See id.* at 380. They therefore have standing to sue her. *See Hippocratic Med.*, 602 U.S. at 380.

---

[13] The Former Employees have pleaded an injury in fact due to their termination from employment at Shriners. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). They have pleaded redressability due to seeking monetary damages from the Commissioner for her failure to fulfill her alleged duty to intervene and stop Shriners from violating their right to refuse the COVID-19 vaccine. *See Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38 (1976).

**2.**

Nonetheless, the Commissioner is entitled to qualified immunity because the Former Employees' claims against her are not based on clearly established law. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Qualified immunity bars suit against state officials in their individual capacity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* An official is only entitled to qualified immunity if she "performs non-ministerial acts within the boundaries of h[er] official capacity." *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019). "Once a public official raises the defense of qualified immunity, the burden rests on the plaintiff to rebut it." *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007).

The Former Employees have failed to meet that standard. *See id.* They contend that the Commissioner is not entitled to qualified immunity because she acted without authority by willfully failing to perform ministerial duties. Thus, their claims against her appear to be based on a failure-to-intervene theory that resembles bystander liability. We have recently held, however, that federal officers are entitled to qualified immunity when it is unclear if they had a duty to intervene. *See Diaz v. Cantu*, 123 F.4th 736, 750 (5th Cir. 2024). As we explained in *Cantu*, bystander liability has not been extended beyond the law enforcement context. *See id.* The Former Employees have similarly pointed to no such caselaw here. Thus, they have failed to demonstrate that they had a clearly established right to have the Commissioner intervene and prevent Shriners from terminating their employment. *See Zarnow*, 500 F.3d at 407.

16

No. 24-40436

Because the Commissioner is entitled to qualified immunity, the district court did not err in dismissing the Former Employees' claims against her. *See Pearson*, 555 U.S. at 231.

**IV.**

In the final paragraph of their reply brief, the Former Employees argue for the first time that the district court should have either dismissed their claims without prejudice or allowed them leave to amend their complaint. They provide no analysis beyond quoting a single unpublished case stating that it is dispreferred to dismiss a suit with prejudice without providing an opportunity to amend. *See Shah v. Novelis*, No. 23-40231, 2024 WL 1739753, at *3 (5th Cir. Apr. 23, 2024) (unpublished). They did not request such relief from the district court.

We conclude that the Former Employees have forfeited this issue. *See Dixon v. Toyota Motor Credit Corp.*, 794 F.3d 507, 508 (5th Cir. 2015) ("Arguments raised for the first time in a reply brief are [forfeited]."); *United States v. Bennett*, 874 F.3d 236, 243 n.9 (5th Cir. 2017) (holding that a "conclusory assertion" constitutes "inadequate briefing" to preserve an argument for review); *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("[A]n issue will not be addressed when raised for the first time on appeal unless it is a purely legal matter and failure to consider the issue will result in a miscarriage of justice." (citation omitted)).[14]

---

[14] Even so, the case that the Former Employees cite is inapposite. It concerns the standard for dismissal with prejudice under Rule 4(m) as a sanction for a plaintiff's delay or misconduct. *See Shah*, 2024 WL 1739753, at *3. The legal standard under that rule is different than under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See Stripling*, 234 F.3d at 872–73 (holding that, in the 12(b)(6) context, "[i]t is within the district court's discretion to deny a motion to amend if it is futile").

17

## V.

For the foregoing reasons, we AFFIRM the district court's judgment dismissing with prejudice the Former Employees' federal-law claims. We also AFFIRM the district court's judgment dismissing the Former Employees' state-law claims with prejudice for lack of supplemental jurisdiction, however, we MODIFY the judgment to reflect that it is without prejudice and AFFIRM as MODIFIED.