**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-1183

_____

BETH BOYD; JANET NOLAND; MICHELLE PECK; CARLY ROBSON,
Appellants

v.

SHRINERS HOSPITALS FOR CHILDREN; SHRINERS HOSPITAL FOR
CHILDREN–ERIE; BEVERLY BOKOVITZ; FRANCES FARLEY; JERRY GANTT;
JOHN MCCABE; PHILLIP GRADY; MARY ANTOON

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 1:23-cv-00342)
District Judge: Hon. Cathy Bissoon

_____

Submitted under Third Circuit L.A.R. 34.1(a)
November 4, 2025

Before: KRAUSE, PHIPPS, and ROTH, *Circuit Judges*

(Filed:  April 14, 2026)

_____

OPINION*

_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

ROTH, *Circuit Judge*.

In 2021, Shriners Hospital (Shriners) in Erie, Pennsylvania fired a group of former employees (the Former Employees) for refusing to take the COVID-19 vaccine despite being required to do so. The Former Employees sued Shriners, claiming their dismissals violated a myriad of constitutional and statutory rights. The District Court dismissed their case with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a decision the Former Employees now appeal. We will affirm the District Court's dismissal for the reasons stated below.

## I.

In December 2020, during the height of the COVID-19 pandemic, the Food and Drug Administration (FDA) issued an emergency use authorization for a vaccine produced by Pfizer-BioNTech (the Pfizer-BioNTech EUA vaccine). The Pfizer-BioNTech EUA vaccine was not fully approved by the FDA; nevertheless, the agency allowed the vaccine to be distributed to individuals 16 and older because an international study of 37,000 participants found it to be 95 percent effective in preventing COVID-19. In August 2021, the FDA reissued the emergency use authorization for the Pfizer-BioNTech EUA vaccine and fully approved its functional equivalent with an identical formulation, known as the Pfizer-BioNTech Comirnaty vaccine.[1]

---

[1] The Former Employees repeatedly refer to publicly available COVID-19 vaccines, such as the Pfizer-BioNTech EUA vaccine, as "investigational drugs" because they did not receive full approval and instead received an emergency use authorization. *See, e.g.*, Appellants' Br. 9. Multiple federal courts, however, have held that the Comirnaty vaccine, which was fully approved by the FDA, is the functional equivalent of the Pfizer-BioNTech EUA vaccine. *See e.g.*, *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1241 (D.

Following the approval of the Comirnaty vaccine, Shriners, in September 2021, instituted a vaccine policy requiring certain employees, such as medical professionals who work with patients and employees who enter hospital buildings, to be fully vaccinated against COVID-19 by the end of the year. Employees were permitted to apply for exemptions from the vaccine requirement if medical or religious reasons prevented them from taking the vaccine. The Former Employees, who were subject to the mandate, all refused to take the vaccine and did not seek a medical or religious exemption. As a result, Shriners terminated the Former Employees for failing to abide by its vaccine policy.

In November 2023, the Former Employees brought the present action against Shriners and other affiliated defendants in the United States District Court for the Western District of Pennsylvania. The Former Employees brought claims under 42 U.S.C. § 1983, asserting that Shriners is a state actor that violated their statutory and constitutional rights. The Former Employees also attempted to bring claims under the Emergency Use Authorization (EUA) statute[2] and Pennsylvania state law.[3]

---

Or. 2021); *Legaretta v. Macias*, 603 F. Supp. 3d 1050, 1059–60 (D.N.M. 2022); *Valdez v. Grisham*, 559 F. Supp. 3d 1161, 1171 (D.N.M. 2021); *Curtis v. Inslee*, 709 F. Supp. 3d 1257, 1264 (W.D. Wash. 2023); *Roberts v. Shriners Hosps. for Child.*, No. 2:23-CV-0295, 2024 WL 5517091, at *2 (E.D. Wash. Feb. 8, 2024); *Brock v. City of Bellingham*, No. 2:24-CV-850, 2025 WL 254725, at *4 (W.D. Wash. Jan. 21, 2025). We therefore will not distinguish between "investigational drugs" and vaccines and instead refer to publicly available COVID-19 immunizations as vaccines.
[2] 21 U.S.C. § 360bbb-3.
[3] The Former Employees brought claims for breach of contract, wrongful termination, and intentional infliction of emotional damage.

The District Court dismissed all of the claims, holding that Shriners was not a state actor for § 1983 purposes and that there was no private cause of action under the EUA statute, and the District Court declined to exercise supplemental jurisdiction over the Former Employees' state law claims. The Former Employees appealed.

## II.[4]

### A.

The Former Employees bring several claims under § 1983, which holds wrongdoers liable for violating plaintiffs' rights while acting under color of state law.[5] Section 1983 is not limited to state or municipal officials and can apply to private actors so long as their conduct occurred under color of state law.[6] Plaintiffs have various tests at their disposal to demonstrate that a private party is a state actor for § 1983 purposes. Because Shriners is a private hospital, the Former Employees attempt to use the (1) public function test,[7] the (2) symbiotic relationship test,[8] and the (3) state-enforced customs test[9] to show that Shriners was acting under color of state law. Their arguments fail under each of these tests.

---

[4] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291.

[5] *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

[6] *Id.* (noting that the wrongful conduct of a defendant in a § 1983 case must have been "made possible only because the wrongdoer is clothed with the authority of state law" (citation modified)).

[7] *See Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982).

[8] *See id.* at 842–43; *see also Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961) ("The State has so far insinuated itself into a position of interdependence with [a private party] that it must be recognized as a joint participant in the challenged activity.").

[9] *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 173–74 (1970).

Under the public function test, the Former Employees must show that the private actor performs a function that is "traditionally the *exclusive* prerogative of the State."[10] This test imposes a "rigorous standard" that plaintiffs rarely meet because they must show that the function is truly exclusive to the state.[11] The Former Employees assert that Shriners performed a public function by imposing a vaccine mandate on its employees.[12] Not so. States do not have the exclusive authority to impose vaccine mandates.[13] Employers in various industries routinely require employees to take various vaccinations, and such policies do not magically transform private employers into state actors.[14] The Former Employees have therefore not sufficiently alleged that Shriners' vaccine mandate was a function exclusive to the state that converted Shriners into a state actor.

The Former Employees also assert that Shriners has a symbiotic relationship with the state because Pennsylvania relied on private parties such as Shriners "to achieve its

---

[10] *Rendell-Baker*, 457 U.S. at 842 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974)).

[11] *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995) (noting that private utility companies, private schools funded with state dollars, and private contractors operating a state school bus program were all found to not have met the public function test).

[12] Appellant Br. 39.

[13] *See Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 444 (5th Cir. 2025), *cert. denied sub nom.*, *Pearson v. Shriners Hosps. Inc.*, 146 S. Ct. 329 (2025) ("A private organization requiring its employees to receive a vaccination is not state action."); *see also Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 282 (6th Cir. 2023) ("A vaccine mandate does not count as a public function traditionally handled just by the State." (internal quotation marks and citation omitted)).

[14] *See Pearson*, 133 F.4th at 444 (noting that it is common for hospitals to place vaccine mandates on employees); *Ciraci*, 62 F.4th at 282 (holding that a food manufacturer's vaccine mandate for employees was not a public function because "[it] is hardly unheard of for private companies to make vaccination a condition of employment").

5

goal of administering" COVID-19 vaccines to the public.[15]  Even if it is true that Shriners

participated in Pennsylvania's COVID-19 vaccination effort, which the Former

Employees allege was "intimately regulated, licensed, and funded"[16] by the state, that

fact alone is insufficient to demonstrate a symbiotic relationship between Shriners and the

state for two reasons.   First, private parties do not become state actors simply by

receiving state funding.[17]  Many private parties receive public funds to provide services

to the government, and the Supreme Court has made clear that the "[a]cts of such private

contractors do not become acts of the government by reason of their significant or even

total engagement in performing public contracts."[18]

Second, the challenged conduct is Shriners' vaccine mandate for employees,

which "was not compelled or even influenced by any state regulation."[19]  The extent to

which a private party's conduct was "influenced by any state regulation" is a factor courts

consider as part of this analysis.[20]  In this case, however, the Former Employees have

made no allegations to suggest any relationship whatsoever between Shriners' internal

vaccine mandate and the state's public vaccination program.  Accordingly, there is no

---

[15] JA 85.
[16] *Id.*
[17] *See Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 165 (3d Cir. 2001) (noting that the Supreme Court rejected the argument in *Rendell-Baker* that a private school was a state actor even though "virtually all of [its] income was derived from government funding" (alteration in original) (citing 457 U.S. at 840)).
[18] *Rendell-Baker*, 457 U.S. at 841.
[19] *Id.*
[20] *Id.*

6

basis for us to conclude there exists a symbiotic relationship between Shriners and the state that renders Shriners' vaccine mandate a state action.

Lastly, the Former Employees make a convoluted argument that Shriners infringed on their rights pursuant to a state-enforced custom when Shriners allegedly "pressure[d] and punish[ed]" the Former Employees for "exercis[ing] their right to refuse unwanted" COVID-19 vaccines while it participated in Pennsylvania's public vaccination program.[21] Their argument again mistakenly conflates Shriners' alleged participation in the state's public vaccination effort with the hospital's imposition of an internal vaccine mandate for employees, which are separate and unrelated actions. The Former Employees do not make any allegations demonstrating that their rights were infringed upon due to a "custom[] having the force of law."[22] Even under the most generous reading of the Former Employees' allegations, we fail to find any plausible indication that Shriners' vaccine mandate was enforced pursuant to a state custom.

The Former Employees' § 1983 claims therefore fail because the Former Employees do not sufficiently allege that Shriners is a state actor.

**B.**

The Former Employees also attempt to assert an independent claim under the EUA statute.[23] They argue that the statute contains an implied private right of action, and that by requiring employees to take the COVID-19 vaccine, Shriners "deprived the [Former

---

[21] Appellants' Br. 44.
[22] *Adickes*, 398 U.S. at 163 (quoting *Civil Rights Cases*, 109 U.S. 3, 16 (1883)).
[23] 21 U.S.C. § 360bbb-3.

7

Employees] of their explicit right to refuse the administration of an emergency use authorized drug."[24] We, however, agree with the numerous federal courts across the country that have held that the EUA statute does not contain an implied private right of action.[25] Accordingly, the District Court correctly dismissed the Former Employees' claim under the EUA statute.

## C.

The Former Employees' remaining claims were brought under state law; therefore, the District Court had supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367. A District Court may, however, "decline to exercise supplemental jurisdiction" if it has "dismissed all claims over which it has original jurisdiction."[26] Given that the District Court properly dismissed the Former Employees' § 1983 and EUA statute claims, the court did not abuse its discretion by dismissing their remaining state law claims.[27]

## III.

For the foregoing reasons, we will affirm the District Court's order dismissing the Former Employees' suit.

---

[24] JA 120.

[25] *See e.g.*, *Pearson*, 133 F.4th at 445; *Bridges v. Houston Methodist Hosp.*, 543 F. Supp. 3d 525, 527 (S.D. Tex. 2021); *Kiss v. Best Buy Stores*, No. 3:22-CV-00281, 2022 WL 17480936, at *8 (D. Or. Dec. 6, 2022); *Roberts*, 2024 WL 5517091, at *8; *Sweeney v. Univ. of Colo. Hosp. Auth.*, No. 23-CV-02451, 2024 WL 3713835, at *19 (D. Colo. July 12, 2024); *Timken v. S. Denver Cardiology Assocs., P.C.*, No. 23-CV-02859, 2024 WL 4407003, at *4 (D. Colo. Aug. 29, 2024).

[26] 28 U.S.C. § 1367(c)(3).

[27] *See Hedges v. Musco*, 204 F.3d 109, 122–24 (3d Cir. 2000).